## PARKER AND WHIPPLE COMPANY *v.* YALE CLOCK COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

Argued October 20, 1887. — Decided October 31, 1887.

The first eight claims of reissued letters-patent No. 10,062, granted March 14, 1882, to Arthur E. Hotchkiss, for improvements in clock movements, on an application for a reissue filed July 19, 1881, (the original patent, No. 221,310, having been granted to Hotchkiss November 4, 1879, on an application filed July 29, 1879, and a prior reissue, No. 9656, having been granted April 12, 1881,) are invalid, because not for the same invention as that of the original patent.

The statutes, and the decisions of this court, on the question of the necessity that a reissued patent should be granted only for the same invention as the original patent, reviewed.

What was suggested or indicated in the original specification, drawings or patent office model is not to be considered as a part of the invention intended to have been covered by the original patent, unless it can be seen, from a comparison of the two patents, that the invention which the original patent was intended to cover embraced the things thus suggested or indicated in the original specification, drawings or patent office model, and unless the original specification indicated that those things were embraced in the invention intended to have been secured by the original patent.

In this case, the original patent was amended so as to cover improvements not covered by it, and which came into use by others than the patentee free from the protection of the patent; and there is no evidence of any attempt to secure by the original patent the inventions covered by the first eight claims of the reissue; and those inventions must be regarded as having been abandoned or waived, so far as the reissue is concerned.

IN equity. To restrain ·alleged infringement of letters-patent. Decree dismissing the bill. Complainants appealed. The case is stated in the opinion of the court.

*Mr. Charles E. Mitchell* for appellants. *Mr. John K. Beach* was with him on the brief.

*Mr. C. R. Ingersoll* for appellee.

Mr. Justice Blatchford delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the District of Connecticut, by the Parker & Whipple Company, a corporation of Connecticut, and Arthur E. Hotchkiss, against the Yale Clock Company, a corporation of Connecticut, and Henry C. Shelton, Frederick A. Lane, and Paschal Converse, directors of the latter company. The suit is founded on reissued letters-patent No. 10,062, granted March 14th, 1882, to Arthur E. Hotchkiss, for improvements in clock movements, on an application for a reissue filed July 19th, 1881, the original patent, No. 221,310, having been granted to Hotchkiss, November 4th, 1879, on an application filed July 29th, 1879, and a prior reissue, No. 9656, having been granted April 12th, 1881.

The Circuit Court dismissed the bill, upon the ground that the invention described in the first eight claims of the reissue, which are the claims alleged to have been infringed, was an invention of which no trace was to be found in the original specification, and was manifestly other and different from that which was the subject of the original patent, and that the statute in regard to reissues forbids such a radical transformation of a patent as was attempted in this case. 21 Blatchford, 485. The plaintiffs have appealed to this court.

The circumstances of this case are so well stated in the opinion delivered by Judge Shipman, holding the Circuit Court, that we adopt his language, as follows:

"At the date of the invention, expensive clocks of tiny size were being made, which met with favor from the public. They were convenient and attractive, and the main object of the patentee (the original specification says a leading object) was to make a good time-keeping clock of the like small size, which could be furnished to the public at the small price which characterizes the manufacture of Connecticut clocks. The clock was devised for this end, unquestionably with much study and painstaking, and I shall assume that the invention, as claimed in the reissue, was both novel and patentable. Much skill and ingenuity have been displayed in attacking

and defending these contested points, but, as I think that a vital point of the plaintiffs' case depends upon the validity of the reissue, I shall confine myself to that question.

" The patentee, in his original specification, stated the nature of his invention as follows : ' This invention relates to that class of time-keepers in which a fixed annular rack or internally toothed wheel is employed to aid a spring-barrel in rotating the train of wheels. The nature of said invention consists, partly, in the combination of a fixed internally toothed circular rack and a concentric-going barrel or plate with a mainspring, a transmitting wheel rotating with said barrel, and a fixed clock movement. It also consists in arranging the operating parts of the timepiece on a fixed plate, and attaching the same to the back of the clock case by means of tongues which extend out from said plate through perforations in the back of said case. It also consists in providing said tongues with broad shoulders, which cause said plate to stand out from the back of the clock case, so as to leave space for the mainspring between them. It also consists in the combination of a mainspring having a perforated end with a lateral finger extending from the broad part of one of said tongues, whereby said mainspring is firmly held at its fixed end, yet easily detached. It also consists in the combination with a fixed plate, which confines the mainspring and supports the movement, of a rotating plate arranged in front of said fixed plate, and provided with a hub which extends through said fixed plate and is connected to the winding end of the mainspring. It also consists in adapting to and combining with the hub thus constructed, a key having a screw-threaded winding part for engaging with said hub, and a recessed part for engaging with the prismatic end of the centre shaft. It also consists in constructing the annular rack or internally toothed wheel with an annular recess for receiving the pillar plate, and thereby economizing space. It also consists in constructing the pillar plate and pillars in one piece, and attaching said pillars to the front plate by twisting them. It also consists in substituting an automatic winding dog, operating like an escapement verge, for the click and spring ordinarily used.

It also consists in constructing the case with an opening at the bottom and adapting the key and the adjusting nut of the pendulum-ball to one another, so that the adjustment of the said ball may be effected conveniently from the outside of the case. It also consists in providing said ball with a spring which will force it down into place and with a guide which will prevent it from turning.' The twelve claims of the original patent were confined to these details thus enumerated in the specification.

"In March, 1880, the Parker & Whipple Company entered into a contract with the Yale Clock Company to manufacture the Hotchkiss clock, at a stipulated price per clock, the licensees furnishing the dies and tools for such manufacture. About 50,000 clocks were made by the defendants and delivered to the licensees between June 17th and December 27th, 1880. During this period the defendant Frederick A. Lane, superintendent of the Yale Clock Company, made the infringing clock. It did not contain a single patented feature of the Hotchkiss clock, but in respect to every other leading feature the parts of the two clocks are interchangeable. The Lane clock was immediately patented, was put upon the market, and is being manufactured by the Yale Clock Company.

"An examination of the Hotchkiss patent showed that the vital parts of the invention were not alluded to in the specification or in the claims. Perhaps the fact that the clock had three wheels and their position might have been understood by an expert, from drawing No. 6. That drawing was not made for the purpose of showing the wheels, and it is manifest, from the specification, that the patentee did not suppose they had anything to do with his invention, which he did suppose lay in entirely other parts of the clock. The model showed a completed clock, and contained whatever was and was not invented by Hotchkiss.

"In the specification of the second reissue, the patentee omitted the entire description which has been quoted, and inserted the following: 'My invention relates to an improvement in clock movements, the object being to make a clock movement which shall be simple and durable in its construc-

tion, of small initial cost in manufacture, and the several parts of which shall be relatively arranged in such manner that the movement may be inclosed in a small and compact case. To this end, the invention consists essentially in dividing the train into two parts; in arranging the divisions of the train in a frame having three plates; in providing an additional wheel and pinion between the escape wheel and centre wheel; in making the three wheels between the escape wheel and centre wheel with the same number of teeth and of the same size; in arranging the pivots of the three arbors, carrying the three like wheels and pinions, between the escape wheel and centre wheel, in the circumferences of circles which are concentric with the centre arbor; and in other minor improvements, as the invention is hereinafter more fully described and explained by reference to the drawings.' In accordance with this statement, the plaintiffs' experts claimed, upon the trial, that the invention consisted generally in the division of the train into two parts, by means of a frame having three plates, the point of division being between the centre wheel and the centre pinion; and, secondly, in the arrangement, between the centre wheel and the escape wheel, of three wheels, which are driven by the centre wheel, in the circumference of a circle which is concentric to the centre arbor, the three wheels being arranged on a semicircle concentric to the centre pinion. This general outline of the invention is stated with accuracy and completeness in eight claims of the reissue, four of which relate to the division of the train into two parts, in a frame having three plates, while the other four relate to the arrangement of the three wheels. The 10th and 11th claims relate to details which were specified in the original patent, but which are not used by the defendants. The defendants infringe the first eight claims.

"The position of the plaintiffs is, that the invention of the reissue was the invention of Hotchkiss, and was shown in the model accompanying the original application for a patent, and that, therefore, the description in the reissue is not to be regarded as new matter, but as a correction of a misstatement in the description contained in the original specification.

" The defendants, making no point in regard to laches in applying for a correction of the original patent, deny the plaintiffs' premise and conclusion. They deny the premise, because they say that the original description limited the invention to that class of time-keepers in which a fixed annular rack or internally toothed wheel is employed to aid a spring barrel in rotating the train of wheels, and that this construction only was shown in the model, and that the importance of the Lane invention consisted in the abandonment of the 'planet wheel' and the substitution therefor of the ordinary main-spring.

" If the premise was true, they deny the conclusion, because it is a fact, the truth of which is apparent, that, in the original specification and drawings, the patentee gave no hint that he regarded the construction described in any one of the first eight claims of the reissue as forming any material or immaterial part of his invention."

On these premises, the court said that " the eight claims which are in controversy are a total abandonment of the principles which are stated in the original patent to be those of the invention, and are an introduction into the reissue of a subject-matter which has no relation to the original patent, except that each patent relates to clocks."

The original patent contained twelve claims, in these words :

" 1.  In combination with a fixed circular rack and a stationary clock-movement, a plate rotated by the mainspring and carrying a device which connects the rack and movement, substantially as and for the purpose set forth.

" 2.  A perforated clock-case back, in combination with a base-plate for the movement, said base-plate being provided with flexible claws, which may pass through the perforations in said clock-case back, substantially as and for the purpose set forth.

" 3.  In combination with mainspring B, perforated at $b$, the lateral attaching-finger $c$ on flange C' of plate C, said parts being constructed and applied substantially as and for the purpose set forth.

" 4.  In combination with mainspring B, the fixed plate C

and its flanges, C', forming a barrel for said spring, but allowing inspection of the latter between the flanges C', substantially as set forth.

"5. In combination with mainspring B and fixed plate C, the rotating plate F and its hub G, said hub extending through plate C for the attachment of the spring, substantially as set forth.

"6. In combination with ratchet V, a verge-like automatic winding-dog U, held in proper position for catching by the forward motion of said ratchet.

"7. In combination with a pillar-plate, a fixed circular rack having an annular inner recess to receive said plate, whereby said rack serves also the purpose of attaching said plate, and the said parts are made to occupy the least possible space.

"8. In combination with a perforated front plate, a rear pillar-plate, having twisted tongues on the ends of its pillars, whereby said plates and pillars are clamped together, substantially as set forth.

"9. In combination with a pendulum-rod and adjustable pendulum-ball, a spring arranged to force said ball down against the adjusting-nut.

"10. In combination with a pendulum-rod and an adjustable pendulum-ball, a spring fitted into a recess of said ball and operating to force the latter down against the said nut.

"11. In combination with the adjusting-nut of a pendulum, a clock-case bottom, perforated at $A^2$, and a key having a prismatic recess fitting said nut, whereby the height of the pendulum-ball may be adjusted by the key from the outside of the clock-case, substantially as set forth.

"12. In combination with a hollow, internally threaded winding-hub, G, a key having a screw-threaded portion for engaging with said hub, and a prismatically recessed portion for passing through said hub and engaging with the centre shaft."

The reissue contains ten claims, as follows:

"1. In a clock movement having a frame consisting of three plates suitably connected together, a train which is divided into two parts, a front part and a back part, the front part

arranged between the front and middle plates of the frame, and the back part arranged between the middle and back plates of the frame, the point of division being between the centre wheel and centre pinion, the said centre wheel and centre pinion being arranged on the centre arbor carrying the minute-hand, as set forth.

"2. In a clock movement having a frame consisting of three plates suitably connected together, the middle plate of the frame, the said middle plate dividing the train into two parts between the centre wheel and centre pinion, the said centre wheel and centre pinion being arranged on the centre arbor carrying the minute-hand, as set forth.

"3. In a clock movement, a frame consisting of three plates suitably connected together, the middle plate of which divides the train into two parts between the centre wheel and centre pinion, the said centre wheel and centre pinion being arranged on the centre arbor carrying the minute-hand, and the frame having the parts of the divided train arranged between its three plates, as set forth.

"4. In a clock movement having a frame consisting of three plates suitably connected together, a centre arbor carrying the minute-hand and provided with a centre wheel and centre pinion, the wheel arranged between the front and middle plates of the frame, and the pinion arranged between the middle and back plates of the frame, as set forth.

"5. The improvement in a clock-train, consisting of three wheels suitably fastened on arbors carrying pinions, and arranged between the escape-wheel and its arbor carrying a pinion, and the centre arbor carrying the centre wheel and centre pinion, as set forth.

"6. The improvement in a clock-train, consisting of three wheels having the same number of teeth and the same diameters, suitably fastened on arbors, the pivots of which are arranged in the circumferences of circles concentric with the centre arbor, the several arbors carrying pinions having the same number of leaves and the same diameters, all the said parts arranged between the escape-wheel and its arbor carrying a pinion, and the centre arbor carrying the centre wheel and centre pinion, as set forth.

" 7. The improvement in a clock-train, consisting in the arrangement of the pivots of the escape-wheel arbor and of the pivots of the three arbors carrying the three wheels and the three pinions between the escape-wheel arbor and the centre arbor carrying the centre wheel and centre pinion, in a semi-circle, as set forth.

" 8. In a clock movement, the combination, with a train divided into two parts, a front part and a back part, by the middle plate of a frame having three plates, the division being made between the centre wheel and centre pinion, the said centre wheel and centre pinion being arranged on the centre arbor carrying the minute-hand, the escape-wheel being arranged in the front part of the train and near the top of the frame, and the pivots of the front part of the train being arranged within a semicircle, of a pendulum attached to an arbor near the top of the frame and vibrating in a plane passing between the front and middle plates of the frame, as set forth.

" 9. In a clock movement provided with a circular rack, the circular disk F, rotated by the mainspring and carrying the planet-wheel E only, which connects the rack with the centre pinion, as set forth.

" 10. In combination with a pendulum-rod, provided with the plate S, fastened to the rod, a spring arranged on the rod, to hold the pendulum-ball against the adjusting-nut, as set forth."

The appellants contend that the first eight claims of the reissue do not specify any invention which is not contained in the clock described in the original patent and embodied in the model originally deposited in the Patent Office, and that the drawings of the original and of the reissued patent are substantially the same. On these premises, it is argued for the appellants, that it is lawful to include in the claims of a reissue whatever is suggested, or substantially indicated, in the specification, model or drawings of the original patent, if the applicant was the original and first inventor thereof, and that such a reissue will, therefore, be for the same invention as that of the original patent.

Expressions in some opinions of this court, wrested from

their context and interpreted in a different sense from that in which they were used, are cited to support these views; but the language of the court on the subject has steadily been to the contrary, and, as the question arises so distinctly in this case, and some misapprehension exists in regard to it, it seems proper to discuss it with some fulness.

The first statutory provision for the reissue of patents was made by the 3d section of the Act of July 3d, 1832, c. 162, 4 Stat. 559. It provided for the reissue in certain cases "for the same invention." This provision of the Act of 1832 was superseded by § 13 of the Act of July 4th, 1836, c. 357, 5 Stat. 122, which provided, "that whenever any patent which has heretofore been granted, or which shall hereafter be granted, shall be inoperative, or invalid, by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had or shall have a right to claim as new; if the error has, or shall have, arisen by inadvertency, accident, or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the Commissioner, upon the surrender to him of such patent, and the payment of the further duty of fifteen dollars, to cause a new patent to be issued to the said inventor, for the same invention."

This provision of the Act of 1836 was in turn superseded by § 53 of the Act of July 8th, 1870, c. 230, 16 Stat. 205, which provided, "that whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee." This provision of the Act of 1870 was enacted in the same language in § 4916 of the Revised Statutes, and was the provision of law in force when the reissue in the present case was granted.

It is thus seen that in all the statutes on the subject of reissues, the only authority granted to the Commissioner is one to issue a new patent "for the same invention."

The provision of the statute of 1836 has been before this court in numerous cases. In *Burr* v. *Duryee*, 1 Wall. 531, 577, at December Term, 1863, this court, speaking by Mr. Justice Grier, said : "The surrender of valid patents, and the granting of reissued patents thereon, with expanded or equivocal claims, where the original was clearly neither 'inoperative nor invalid,' and whose specification is neither 'defective or insufficient,' is a great abuse of the privilege granted by the statute, and productive of great injury to the public. This privilege was not given to the patentee or his assignee in order that the patent may be rendered more elastic or expansive, and therefore more '*available*' for the suppression of all other inventions."

The case of *Seymour* v. *Osborne*, 11 Wall. 516, was before this court at December Term, 1870. The answer set up, as a defence, that the reissued patents sued on were void, because not granted for the same invention as that embodied in the original patents. The court overruled the defence on the ground stated by it, p. 544, that the original patents were not in evidence in the case. Notwithstanding this, the opinion, delivered by Mr. Justice Clifford, said: "Reissued letters-patent must, by the express words of the section authorizing the same, be *for the same invention*, and consequently where it appears on a comparison of the two instruments, as matter of law, that the reissued patent is not for the same invention as that embraced and secured in the original patent, the reissued patent is invalid, as that state of facts shows that the commissioner, in granting the new patent, exceeded his jurisdiction. Power is unquestionably conferred upon the commissioner to allow the specification to be amended if the patent is inoperative or invalid, and in that event to issue the patent in proper form; and he may, doubtless, under that authority, allow the patentee to redescribe his invention and to include in the description and claims of the patent not only what was well described before, but whatever else was suggested or

substantially indicated in the specification or drawings which properly belonged to the invention as actually made and perfected. Interpolations of new features, ingredients, or devices, which were neither described, suggested, nor indicated in the original patent, or patent office model, are not allowed, as it is clear that the commissioner has no jurisdiction to grant a reissue unless it be for the same invention as that embodied in the original letters-patent, which necessarily excludes the right on such an application to open the case to new parol testimony and a new hearing as to the nature and extent of the improvement, except in certain special cases, as provided in a recent enactment not applicable to the case before the court. Corrections may be made in the description, specification, or claim where the patentee has claimed as new more than he had a right to claim, or where the description, specification, or claim is defective or insufficient, but he cannot under such an application make material additions to the invention which were not described, suggested, nor substantially indicated in the original specifications, drawings, or patent office model. . . . Letters-patent reissued for an invention substantially different from that embodied in the original patent are void and of no effect, as no jurisdiction to grant such a patent is conferred by any act of Congress upon the commissioner, and he possesses no power in that behalf except what the acts of Congress confer. Whether a reissued patent is for the same invention as that embodied in the original patent or for a different one, is a question for the court in an equity suit, to be determined as a matter of construction, on a comparison of the two instruments, aided or not by the testimony of expert witnesses, as it may or may not appear that one or both may contain technical terms or terms of art requiring such assistance in ascertaining the true meaning of the language employed."

In these extracts from the opinion it is seen that the court adheres strictly to the view, that, under the statute, the Commissioner has no jurisdiction to grant a reissued patent for an invention substantially different from that embodied in the original patent, and that a reissue granted not in accordance

with that rule is void. In what is there said about redescribing the invention, and about including in the new description and new claims what was suggested or indicated in the original specification, drawings or patent office model, it is clearly to be understood, from the entire language, that the things so to be included are only the things which properly belonged to the invention as embodied in the original patent; that what that invention was is to be ascertained by consulting the original patent; and that, while the new description may properly contain things which are indicated in the original specification, drawings or patent office model, (though not sufficiently described in the original specification,) it does not follow that what was indicated in the original specification, drawings or patent office model is to be considered as a part of the invention, unless the court can see, from a comparison of the two patents, that the original patent embodied, as the invention intended to be secured by it, what the claims of the reissue are intended to cover.

In what was thus said in *Seymour* v. *Osborne* there is no warrant for the view, that, *ex vi termini*, what was suggested or indicated in the original specification, drawing or patent office model is to be considered as a part of the invention intended to have been covered by the original patent, unless the court can see, from a comparison of the two patents, that the invention which the original patent was intended to cover fairly embraced the things thus suggested or indicated in the original specification, drawings or patent office model, and unless the original specification indicated that those things were embraced in the invention intended to have been secured by the original patent.

The "recent enactment" referred to in *Seymour* v. *Osborne* is found in § 53 of the act of July 8th, 1870, in these words: "but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the commissioner that such new matter or amendment was a part of the original invention,.

and was omitted from the specification by inadvertence, acci-dent, or mistake, as aforesaid." This provision is now found in the same words, in § 4916 of the Revised Statutes. The last clause of it has no application to the present case, and, therefore, its proper construction need not be considered.

The case of *Gill* v. *Wells*, 22 Wall. 1, at October Term, 1874, arose under the act of 1836. In that case, this court, speaking by Mr. Justice Clifford, said, p. 19: "Invalid and inoperative patents may be surrendered and reissued for the same invention, but Congress never intended that a patent which was valid and operative should be reissued merely to afford the patentee an opportunity to expand the exclusive privileges which it secures, to enable him to suppress subse-quent improvements which do not conflict with the invention described in the surrendered patent. Evidence of a decisive character to negative the theory that such a practice finds any support in the act of Congress, besides what existed before, is found in the new Patent Act," (the act of July 8th, 1870, § 53,) "which expressly provides that no new matter shall be introduced into the specification; and in case of a machine patent, that neither the model nor the drawings shall be amended except each by the other."

In the case of *Powder Company* v. *Powder Works*, 98 U. S. 126, at October Term, 1878, this court, speaking by Mr. Justice Bradley, said, p. 137, in reference to the reissued patents in that case: "These reissues being granted in 1872, were subject to the law as it then stood, being the act of July 8, 1870, the fifty-third section of which (reproduced in § 4916 of the Revised Statutes) relates to the matter in ques-tion. It seems to us impossible to read this section carefully without coming to the conclusion that a reissue can only be granted for the same invention which formed the subject of the original patent of which it is a reissue. The express words of the act are, 'a new patent for the same invention'; and these words are copied from the act of 1836, which in this respect was substantially the same as the act of 1870. The specification may be amended so as to make it more clear and distinct; the claim may be modified so as to make it more

comformable to the exact rights of the patentee; but the invention must be the same. So particular is the law on this subject, that it is declared that 'no new matter shall be introduced into the specification.' This prohibition is general, relating to all patents; and by 'new matter' we suppose to be meant new substantive matter, such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent. The danger to be provided against was the temptation to amend a patent so as to cover improvements which might have come into use, or might have been invented by others, after its issue. The legislature was willing to concede to the patentee the right to amend his specification so as fully to describe and claim the very invention attempted to be secured by his original patent, and which was not fully secured thereby, in consequence of inadvertence, accident, or mistake; but was not willing to give him the right to patch up his patent by the addition of other inventions, which, though they might be his, had not been applied for by him, or, if applied for, had been abandoned or waived. For such inventions he is required to make a new application, subject to such rights as the public and other inventors may have acquired in the meantime. This, we think, is what the present statute means, and what, indeed, was the law before its enactment, under the previous act of 1836. If decisions can be found which present it in any different aspect, we cannot admit them to be correct expositions of the law. The counsel for the complainant refers us to, and places special reliance on, the last clause of § 53 of the act of 1870, where it is said: 'But where there is neither model nor drawing, amendments may be made upon proof satisfactory to the commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake.' But this clause relates only to the evidence which may be employed by the commissioner in ascertaining the defects of the specification. It does not authorize him to grant a reissue for a different invention, or to determine that one invention is the same as another and different one, or that two inventions

essentially distinct constitute but one. In this case, it is not necessary for us to decide, and we express no opinion, as to the precise meaning and extent of the final clause of § 53, to which we have referred; as, whether it relates to all patents, or only to patents for machines. But as it relates to the matter of evidence alone, it cannot enlarge the power of the commissioner in reference to the invention for which a reissue may be granted. That power is restricted, by the general terms of the section, to the same invention which was originally patented."

If, by "new matter," in § 4916 of the Revised Statutes, is meant such new substantive matter as might be the subject of another application for a patent, there was new substantive matter introduced into the specification of the reissue in the present case; for the description set forth in that specification as the foundation for the first eight claims in it, and those eight claims themselves, might have been the subject of another application for a patent, at the time the original patent was applied for and taken out, leaving that patent valid and operative in respect to the claims it covered.

In the present case, the infringing clock was made by the defendant Lane more than six months before the reissue in suit was applied for. As stated by the Circuit Court in its opinion in this case, the Lane clock did not contain a single patented feature of the Hotchkiss clock, and it was immediately patented and put upon the market. This, therefore, is a case of the amendment of a patent so as to cover improvements not covered by the patent, and which came into use by others than the patentee and his licensee, free from the protection of the patent.

There is no evidence of any attempt to secure by the original patent the inventions covered by the first eight claims of the reissue, and those inventions must be regarded as having been abandoned or waived, so far as the reissue in question is concerned, subject, however, to the right to have made a new application for a patent to cover them; in other words, those eight claims are not for the same invention which was originally patented.

In *Mahn* v. *Harwood*, 112 U. S., 354, 359, at October Term, 1884, it was said by this court, speaking by Mr. Justice Bradley: " In this very matter of reissued patents, it has also been frequently decided that it is a good defence, in a suit on such a patent, to show that the commissioner exceeded his authority in granting it. Such a defence is established by showing that the reissued patent is for a different invention from that described in the original, inasmuch as the statute declares that it must be for the same invention."

The same view was taken in *Coon* v. *Wilson*, 113 U. S. 268, 277, at October Term, 1884, a case substantially like the present one, where it was said: " Although this reissue was applied for a little over three months after the original patent was granted, the case is one where it is sought merely to enlarge the claim of the original patent, by repeating that claim and adding others; where no mistake or inadvertence is shown, so far as the short or sectional bands are concerned; where the patentee waited until the defendants produced their continuous band collar, and then applied for such enlarged claims as to embrace the defendants' collar, which was not covered by the claim of the original patent; and where it is apparent, from a comparison of the two patents, that the reissue was made to enlarge the scope of the original. As the rule is expressed in the recent case of *Mahn* v. *Harwood*, 112 U. S. 354, a patent 'cannot be lawfully reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake, inadvertently committed, in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted.' But a clear mistake, inadvertently committed, in the wording of the claim, is necessary, without reference to the length of time. In the present case, there was no mistake in the wording of the claim of the original patent. The description warranted no other claim. It did not warrant any claim covering bands not short or sectional. The description had to be changed in the reissue, to warrant the new claims in the reissue. The description in the reissue is not a more clear and satisfactory statement of what is described in the original

patent, but is a description of a different thing, so ingeniously worded as to cover collars with continuous long bands and which have no short or sectional bands." See also *Ives* v. *Sargent*, 119 U. S. 652, 662, 663.

Reference was made on the argument to language used by Mr. Justice Bradley, in delivering the opinion of this court in the case of *The Cornplanter Patent*, 23 Wall. 181, 217, where he said : " It may be remarked in passing, that, in our view, the several reissues are for things contained within the machines and apparatus described in the original patents." The reissues referred to were sustained by this court. There is nothing in the remark thus made to show that the court did not find the reissues to be for the same inventions as the original patents, consistently with the views contained in the other cases above referred to, or that the court did not follow those views in deciding that case.

Comment is made by the appellants upon the fact that the original specification states that the " mainspring occupies the whole back of the space occupied by the works, so as to give the greatest running power with the least possible expense of room, one of the leading objects of my invention being to render it possible to make a cheap, neat, and satisfactory timepiece of unusually small size ; " and upon the further fact that the specification of the reissue states that the invention has for its object " to make a clock movement which shall be simple and durable in its construction, of small initial cost in manufacture, and the several parts of which shall be relatively arranged in such manner that the movement may be enclosed in a small and compact case." It is urged that every one of the claims of the reissue responds to the object of making a cheap and small but satisfactory timepiece. But this statement, in the original specification, of the object of the invention, in such general terms, cannot have the effect of making the reissue one for the same invention as that of the original, when it otherwise would not be. Such a general statement contained no intimation that the invention consisted in the matters covered by the first eight claims of the reissue.

*The decree of the Circuit Court is affirmed.*