NELSON *v.* FELSING.

FELSING *v.* NELSON.

PATENTS; SPECIFICATIONS AND CLAIMS; REISSUE; INTERFERENCE; FORMER ADJUDICATION; COLLATERAL ATTACK.

1. To warrant new and broader claims in a reissue, such claims must not be merely suggested or indicated by the original specifications, drawings, or models; but it must further appear from the patent, that they constitute parts of the invention which were intended to be

covered by the patent. (Distinguishing *Re Briede,* 27 App. D. C. 298.)

2. An award of priority in an interference proceeding is not *res judicata* of the subject-matter of a subsequent interference between the same parties, when the later interference was declared between a reissue application of the party so awarded priority and a patent granted the other party, and in such second interference it has been decided that the reissue claims were not warranted by the drawings and specifications of the original patent.

3. An applicant for a reissue is not barred from stating in his reissue claims new functions of his invention because such functions were not set forth in his original application, where all of the elements of the invention were shown in his original drawings. (Following *Re Briede, supra.*)

4. A judgment obtained by fraud or duress must be attacked in a direct proceeding, and not collaterally.

Nos. 504 and 505. Patent Appeals. Submitted November 11, 1908. Decided January 12, 1909.

HEARING on two appeals from a decision of the Commissioner of Patents in an interference proceeding.     *Affirmed.*

The COURT in the opinion stated the facts as follows:

These are appeals from the decision of the Commissioner of Patents in an interference proceeding. The Examiner of Interferences awarded judgment of priority to Nels L. Nelson on all seven of the counts of the issue, which decision was affirmed by the Board of Examiners-in-Chief. On appeal, the Commissioner reversed the decisions of the lower tribunals as to count 6, affirming them as to the remainder. From this decision both parties have appealed to this court.

The invention in issue relates to improvements in pneumatic stackers in which the straw is delivered to a hopper in front of a fan or fans, whence it is projected through a stacker tube to the desired point. Other hoppers are located above the fan casings into which the chaff from the grain separating sieves is discharged. These hoppers taper towards and are open at the bot-

tom, and communicate with the fan or fans, so that chaff falling into the hoppers is drawn into the fans and discharged, together with the straw, through the stacker tube; but any heavy objects, such as wrenches, cylinder teeth, and the like, which may have accidentally passed through the separators, will drop directly through the open bottoms of the hoppers, without passing into the fans or the straw chute. The fan casings are provided with V-shaped portions which form parts of the inclined sides of the adjacent hoppers.

The invention is embraced in the following counts:

"1. In a straw stacker, the combination of a blower having a lateral opening, and a hopper arranged to direct material towards the lateral opening of the blower, and provided at its bottom with an opening to permit heavy objects to drop through the straw stacker, substantially as described.

"2. In a straw stacker, the combination of a blower provided with lateral openings, rear hoppers located at opposite sides of the blower to direct material to the lateral openings, and provided with open bottoms to permit heavy objects to fall through the straw stacker, and a front hopper located in advance of the blower, substantially as described.

"3. In a straw stacker, the combination of a blower having a plurality of fan casings, and provided at opposite sides of the same with hoppers having open bottoms to permit heavy objects to drop through the stacker, and fans operating in the casings, substantially as described.

"4. In a straw stacker, the combination of a blower, a rear hopper provided with an open bottom and arranged to direct chaff towards the blower, and a front hopper arranged in advance of the blower to receive the straw, substantially as described.

"5. In a straw stacker, the combination of a blower having lateral openings, rear hoppers arranged to direct chaff to the blower, and provided with open bottoms, a front hopper arranged to receive the straw and communicating at its back with the blower, and a chute connected with the front of the front hopper, substantially as described.

"6. In a straw stacker, the combination of a casing forming the body of the stacker and provided with front and rear hoppers, fan casings mounted in the rear portions of the said casing and located between the rear hoppers, and provided with caps having oppositely inclined sides, and fans operating in the fan casings, substantially as described.

"7. A straw stacker provided with a fan and having an intermediate outlet located at a point between the discharge end of the straw stacker and the fan to permit heavy articles to drop through the straw stacker, substantially as described."

This interference involves a patent granted to Nelson and an application for reissue of a patent to Felsing. The application upon which Nelson's patent was issued was filed March 4, 1903, and Felsing's original application, upon which his patent was granted, was filed one day later, on March 5, 1903. The record shows that the claims forming counts 1, 2, 3, 4, 5, and 6 of the issue were included by Nelson in his application as first presented, and that the claim corresponding to count 7 was inserted by an amendment filed June 2, 1903. Felsing's original application contained no description or claims relative to the invention embraced in counts 1, 2, 3, 4, 5, and 7, although the drawings might be construed to show hoppers having open bottoms. On June 10, 1903, three claims taken from Felsing's application were suggested to Nelson for the purposes of interference, and, upon the adoption of these claims, an interference was declared on September 8, 1903. A formal concession of priority was filed by Nelson on October 10, 1903, and on October 12, 1903, judgment was rendered in favor of Felsing. Felsing's patent was issued on December 22, 1903. Nelson's patent, containing the claims corresponding to the counts here under consideration, was granted January 5, 1904. Over one year later, on January 13, 1905, Felsing filed his application for reissue, the one here in interference, which contained an additional figure, a description of the invention here in controversy, and claims corresponding to the counts of the issue. A further object of his invention was stated to be "to provide a construction in which the chaff and finer stuff may be received directly from the screen shoes of the

separator and passed through the fan casing, and from thence into the main chute, the construction being such that any heavy objects, such as wrenches, cylinder teeth, and the like, which may have accidentally passed through the separator, will drop directly through the receiving hopper without passing into the fan or the straw chute." On September 1, 1905, Nelson filed a motion to dissolve the interference on the ground that Felsing has no right to make such claims, inasmuch as it does not appear from his original patent that the claims so presented constitute parts or portions of the invention which were sought or intended to be covered by the original patent. This motion was granted by the Primary Examiner, but, on appeal, the Board of Examiners-in-Chief reversed this decision. Nelson having no further right of appeal, the case then went to the Examiner of Interferences, where it was heard on the merits.

Mr. E. G. Siggers and Mr. H. F. Riley for Nels L. Nelson.

Messrs. Bradford & Hood for Samuel D. Felsing.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The subject-matter of Felsing's appeal will first be considered. We are met at the outset with the question of his right to make claims corresponding to counts 1, 2, 3, 4, 5, and 7. Not only were his original specification and claims silent in regard to the bottoms of the hoppers being open, but his drawings, on which he bases his right to the claims, are so vague and indefinite on this point as to lead the Primary Examiner to remark, when considering the motion to dissolve, "It is enough to say that, in my opinion, the study of it, with or without the aid of his specifications, would not suggest to the reader the subject of these claims. After reading Nelson's patent, he might go searching Felsing's drawing, and fancy he could put such a construction upon some uncertain lines of it as would enable him to strain the open-bottomed hopper invention into it. But coming, fresh, to Felsing's patent, and without any prior suggestion as to the matter, I do

not think the patent would afford a clear and distinct suggestion of the matter. In fact, Felsing himself confesses to a material lack of this sort in his patent drawing, by presenting in his re-issue drawing, an additional figure patterned closely after Nelson's figure 4, all which is quite persuasive of an endeavor on Felsing's part to level up his showing to Nelson's."

Section 4916 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 3393, provides that, under certain conditions, the Commissioner, on surrender of a patent, may cause a new patent for the same invention to be issued to the patentee. "The specification may be amended so as to make it more clear and distinct; the claim may be modified so as to make it more conformable to the exact rights of the patentee; but the invention must be the same." *Giant Powder Co.* v. *California Powder Works,* 98 U. S. 126, 25 L. ed. 77. The phrase "same invention" has repeatedly been defined by the courts to mean whatever invention was described in the original letters patent and appears therein to have been intended to be secured thereby. Walker, Patents, sec. 233. Mere disclosure in the drawing is not sufficient to evidence such intention. This rule precludes the interpolation of new matter into the reissue application. "By 'new matter' we suppose to be meant 'new substantive matter,' such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent." *Giant Powder Co.* v. *California Powder Works, supra.* The case of *Parker & W. Co.* v. *Yale Clock Co.* 123 U. S. 87, 31 L. ed. 100, 8 Sup. Ct. Rep. 38, is directly in point. This suit was brought on a re-issued patent. The original patent contained no description of the subject-matter covered by the first eight claims of the reissue, although the drawings might be construed to disclose the invention. "An examination of the Hotchkiss patent showed that the vital parts of the invention were not alluded to in the specification, or in the claims. Perhaps the fact that the clock had three wheels, and their position, might have been understood by an expert, from drawing No. 6." The Supreme Court, speaking of the right to make the claims in the reissue, said through Mr. Justice Blatchford: "In what was thus said in *Seymour* v. *Os-*

*borne,* 11 Wall. 516, 20 L. ed. 33, there is no warrant for the
view that *ex vi termini,* what was suggested or indicated in the
original specification, drawing, or patent-office model is to be
considered as a part of the invention intended to have been
covered by the original patent, unless the court can see, from a
comparison of the two patents, that the invention which the orig-
inal patent was intended to cover fairly embraced the things
thus suggested or indicated in the original specification, draw-
ings, or patent-office model, and unless the original specification
indicated that those things were embraced in the invention in-
tended to have been secured by the original patent." In the
case at bar, the original specification, being silent on the subject,
most certainly did not indicate that the invention covered by this
appeal was embraced in the invention intended to have been
secured by the original patent.

The case of *Corbin Cabinet Lock Co.* v. *Eagle Lock Co.* 150
U. S. 38, 37 L. ed. 989, 14 Sup. Ct. Rep. 28, went even further
than the case just cited. The first claim of the reissue patent
was for a combination of a lock with a mortise. The drawings
of the reissue were the same as those of the original patent, and
the specification of the latter partially described the mortise, but
the lock alone was claimed. The court, speaking through Mr.
Justice Jackson, said: "It is settled by the authorities that, to
warrant new and broader claims in a reissue, such claims must
not be merely suggested or indicated in the original specifica-
tion, drawings, or models, but it must further appear from the
original patent that they constitute parts or portions of the in-
vention which were intended or sought to be covered or secured
by such original patent."

We can see nothing inconsistent with this view in the case of
*Re Briede,* 27 App. D. C. 298. There, there was no new matter
introduced into the specification of the reissue patent, and the
drawings were the same as in the original patent. The claim
was for the same invention as that already secured, and was
suggested by the specification when taken in connection with the
drawings. The court, differentiating from *Parker & W. Co.* v.
*Yale Clock Co., supra,* said: "In the case last cited there was

new matter introduced into the specification of the reissue patent, and claims were based upon such matter. The original claims related to one part of the machine, the reissue claims to another part." This distinction applies with equal force to the case before us.

Summing up the authorities, Walker, in his work on Patents, sec. 233, says: "Therefore no reissue claim can stand any longer upon a model alone, nor even alone upon a drawing of an original patent; and, indeed, neither models, drawings, nor descriptions, nor all of them together, can support a reissue claim, except where the description in the original letters patent shows that the invention covered by that claim was intended to be secured in the original."

It is contended by counsel for Felsing that the former proceeding in the Patent Office is *res judicata* of the subject-matter of the present interference. Having held that Felsing evinced no intention to claim this invention, it must follow that it was not tried and determined by such proceeding.

Count 6, however, stands upon a different foundation. The principal element in this count is the fan casings having oppositely inclined sides or V-shaped portions. Felsing not only shows these in his drawings, but describes and claims them. While, in his original patent, he states the object of these V-shaped portions to be to deflect the air "more certainly and powerfully into the hopper or air trunk," yet, having described and claimed them, he is entitled to the benefit of the function stated in his reissue application of preventing "a lodgment of material on the tops of the fan casings," and "to provide a construction by which the chaff and finer stuff may be received directly from the screen shoes of the separator and passed through the fan casing, and from thence into the main chute." It is contended that Felsing fails to describe and claim "rear hoppers." While this is true, the construction shown necessarily forms "rear hoppers," and Felsing is not barred from making such claim in his reissue application by his failure to designate his construction by the term "hoppers." This count comes under the decision in *Re Briede,* supra.

It was held by the Commissioner that the count just considered covers substantially the same invention as count 3 of the former interference. This count reads as follows:

"3. In a device of the class described, a frame, a hopper, fan casings supported in front of said hopper and discharging into the front end of the latter, said fan casings having upper inverted V-shaped portions and air intakes in the sides thereof, a shaft journaled upon the sides of the frame and extending through the fan casings, and fans upon said shaft within the fan casings."

With the Commissioner, we must agree. The two counts are so nearly identical that the invention covered by count 6 must necessarily have been tried and determined by the prior interference.

Nelson has offered evidence to prove that the concession of priority filed in the former interference was obtained from him by duress, and, for that reason, the judgment rendered thereon is not *res judicata.* It is unnecessary for us to consider this evidence. The question is not properly before us. A judgment obtained by fraud or duress must be attacked in a direct proceeding, and not collaterally.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as, by law, required.                                        *Affirmed.*

A motion by Samuel D. Felsing to recall the opinion and judgment and extend the time for filing a motion for a rehearing was overruled February 5, 1909.