**In re MURRAY.**
**Patent Appeal No. 3086.**

Court of Customs and Patent Appeals.
May 1, 1933.

Milans & Milans, of Washington, D. C. (Usina & Rauber, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On January 12, 1926, a patent, No. 1,-569,332, on improvements in the manufacture of housings, was granted to appellant by the United States Patent Office. The housings in question were such as are commonly used for the gearing and rear axles of automobiles, with tubular extensions on opposite sides to house the wheel driving shafts.

Certain drawings delineating appellant's invention, known as figures 1, 2, and 3, were a part of the original application and patent, and were the only drawings attached thereto. They are as follows:

celed by the applicant before the issuance of patent. These canceled claims are as follows:

"1. A rear axle housing for automobiles comprising an annular wall with inward

INVENTOR
Thomas E. Murray Jr.
BY
D. Anthony Usina ATTORNEY

In the proceedings in the Patent Office, preliminary to the issuance of appellant's original patent, certain claims were presented by way of amendment, which were canceled

flanges at its edges and with diametrically opposite openings, the portions of the wall surrounding said openings being flattened, and tubular extensions passing through said

openings and having flanges on their inner end portions bearing on the inner faces of the flattened portions of the wall and having flanges formed by upsetting the intermediate portions of said extensions bearing against the outer faces of said flattened portions.

"2. A rear axle housing for automobiles comprising an annular wall with inward flanges at its edges and with diametrically opposite openings, and tubular extensions passing through said openings and having on their inner end portions flanges bearing on the inner face of the wall and shaped to engage the wall flanges to prevent rotation of the extensions, said extensions having also flanges bearing on the outer face of the wall and formed by upsetting the intermediate portions of said extensions."

The present application is for a reissue, and was filed January 5, 1928. In connection with the application for reissue, claims known as 1, 3, and 4 were filed, and were rejected by both tribunals in the Patent Office. These claims are as follows:

"1. A housing for automobile rear axle comprising a central annular portion with inward flanges at its edges and with diametrically opposite openings and tubular extensions having their inner ends of substantially the same size as said openings and united to the central portion at said openings, and said extensions terminating substantially at said openings."

"3. A housing for automobile rear axles comprising a central annular portion with inward flanges at its edges and with diametrically opposite openings surrounded by outward flanges, and tubes having inner end portions abutting against and fastened to said outward flanges.

"4. A housing for automobile rear axles comprising a central annular portion with inward flanges at its edges and with diametrically opposite openings surrounded by outward flanges, and tubes having inner end portions abutting against and fastened to said outward flanges and extending inward through said flanges and terminating substantially in register with the central annular portion."

The examiner, while citing certain references, rejected these claims "on the ground of estoppel which flowed from a cancellation of somewhat narrower claims in an original application."

The Board of Appeals made the following statement:

"On comparison, it is found that claim 1 on appeal omits the flattened portion of the annular member adjacent the points where the tubular extensions are attached which was a limitation in claim 1 of those cancelled. This appealed claim also omits the upset element of tubular extension 3 constituting flange 6 from the cancelled claim 2, and it omits the inner flanges 5 and 5a which was included in each of the cancelled claims.

"Claim 3 omits the flattened portion and the inner flanges 5 and 5a mentioned in connection with claim 1.

"Claim 4, like claim 1, omits the flattened portion and the flanges 5 and 5a. The last clause of claims 1 and 4 require that the extensions of the tubular members where attached to the annular member terminate substantially in registry with the central annular portion or substantially at said openings. This clause is understood to require that the flange 5 or 5a be omitted from the inner ends of the tubular members. This is very clearly a broadening of the claim, and it may be noted further that it is misleading in that applicant does not show or describe such an arrangement. This modification of claims 1 and 4 is considered to be a broadening of scope and unwarranted. The rejection on the ground of estoppel applies for this reason.

"It thus appears that the three claims have been materially broadened, and it is our opinion that they are properly rejected upon the ground of estoppel in accordance with the rule set forth in Ex parte White, 1928 C. D. page 6. The rule stated in that decision makes clear the rule stated in more general terms in Denton v. Commissioner of Patents, 1898 C. D. 483."

This decision, as we understand it, is, in effect, that claims 1 and 4 should be rejected because based upon an insufficient disclosure. The further observation is made, by both the examiner and the board, that there has been a broadening of the scope of all three claims, and that the rejection on the ground of estoppel applies for that reason on the claimed authority of Ex parte White, 1928 C. D. 6.

The drawings appearing in the original application and patent, and hereinbefore referred to as figures 1, 2, and 3, are identical with those used in this application for reissue.

Claims 1 and 4 omit the flattened portion of the housing surrounding the opposite openings and the flanges 5 and 5a. The appellant argues that the original disclosure of the drawings showed tubes "terminating substantially at said openings." Such a view, however, loses sight of the character of these

flanges. Figure 2 shows that they are square, extend entirely across the breadth of the housing, and operate, as stated by the appellant in his application for reissue:

"Preferably the flange 5 on the inner end of the tube and the corresponding inner face of the wall of the housing are so shaped as to prevent rotation of the tube on its axis relatively to the housing. For example, as shown in Fig. 2, the flange may have its side edges bearing against the flanges 2 of the housing for this purpose.

"It is not essential that the flange 5 be on the very end of the extension. It may be a flange similar to the flange 6, formed on the tube at a point slightly back of the end of the latter so that the tube itself will project slightly into the housing, to provide a longer axle bearing or for some other purpose."

It will thus be seen that these flattened surfaces and flanges are not immaterial matters, but are features of substance. In their omission, the appellant is making claims for an invention not originally disclosed by him, and, hence, is not entitled to the allowance of claims 1 and 4.

While claim 3 also omits, generally, mention of the flattening and interior flanges, it does add the features of outward flanges and tubes abutting thereupon, features which were disclosed by the original application and which were not claimed therein. No issue being raised as to there having been inadvertence, accident, or mistake, this claim comes fairly within the scope of the reissue statute, section 4916, Rev. St. (35 USCA § 64), and should be allowed.

In view of the conclusions of the Patent Office tribunals as to the application of the doctrine of estoppel, it is thought advisable to consider this subject briefly.

If a certain invention is not disclosed in the original patent or application therefor, certainly no reissue may be had, incorporating such invention. In such case, the rejection will rest, not on estoppel, but on a failure of any disclosure upon which reissue claims may be based.

If, however, the invention in question has been disclosed in the original or amended application, and claims incorporating, either broadly or specifically, such invention, have been withdrawn or canceled, before patent, then the applicant for reissue is estopped from further claiming such invention by way of reissue. The purpose of this rule is well expressed by Mr. Justice Bradley, in Leggett v. Avery, 101 U. S. 256, 259, 25 L. Ed. 865: "* * * If, in any case, where an applicant for letters-patent, in order to obtain the issue thereof, disclaims a particular invention, or acquiesces in the rejection of a claim thereto, a reissue containing such claim is valid (which we greatly doubt), it certainly cannot be sustained in this case. The allowance of claims once formally abandoned by the applicant, in order to get his letters-patent through, is the occasion of immense frauds against the public. It not unfrequently happens that, after an application has been carefully examined and compared with previous inventions, and after the claims which such an examination renders admissible have been settled with the acquiescence of the applicant, he, or his assignee, when the investigation is forgotten and perhaps new officers have been appointed, comes back to the Patent Office, and, under the pretence of inadvertence and mistake in the first specification, gets inserted into reissued letters all that had been previously rejected. In this manner, without an appeal, he gets the first decision of the office reversed, steals a march on the public, and on those who before opposed his pretensions (if, indeed, the latter have not been silenced by purchase), and procures a valuable monopoly to which he has not the slightest title. We have more than once expressed our disapprobation of this practice. As before remarked, we consider it extremely doubtful whether reissued letters can be sustained in any case where they contain claims that have once been formally disclaimed by the patentee, or rejected with his acquiescence, and he has consented to such rejection in order to obtain his letters-patent. Under such circumstances, the rejection of the claim can in no just sense be regarded as a matter of inadvertence or mistake. Even though it was such, the applicant should seem to be estopped from setting it up on an application for a reissue."

The Board of Appeals states, in the case at bar: "It thus appears that the three claims have been materially broadened and it is our opinion that they are properly rejected upon the ground of estoppel in accordance with the rule set forth in Ex parte White, 1928 C. D. page 6."

The rule in Ex parte White, supra, is thus expressed: "Appellant states that the appealed claims are broad in scope and appear to dominate his invention. He also states that they are very similar to claims 1 and 2 of his original application. The deliberate withdrawal of a claim in order to

secure a patent is conclusive of the presumption that there has been no inadvertence, accident, or mistake, and the invention thus abandoned can not ⸱be regained either by construing the claims of the patent broadly or by obtaining a reissue with broadened claims. The rule is the same whether the claims sought by reissue or otherwise are identical, substantially the same, or broader than the abandoned claims."

The respect in which the board believed the claims had been broadened has been hereinbefore shown by the quotation of a portion of its decision.

In Shepard v. Carrigan, 116 U. S. 593, 6 S. Ct. 493, 495, 29 L. Ed. 723, Mr. Justice Woods thus stated the rule: " * * * Where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the patent-office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent." To the same effect are Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 S. Ct. 28, 37 L. Ed. 989; Dobson v. Lees, 137 U. S. 258, 11 S. Ct. 71, 34 L. Ed. 652; Grand Rapids Show Case Co. v. Baker (C. C. A.) 216 F. 341.

The Court of Appeals of the District of Columbia, in Re Denton, 12 App. D. C. 504, discussed this subject thoroughly and came to this conclusion:

"That the claim sought in the reissue is not as broad as the original claim, is of no consequence. It was included in it. When the applicant amended and limited that original claim, if he limited it to a greater extent than was necessary, such extreme limitation may have been a mistake of judgment; but it was certainly an abandonment of all that was contained in the original claim and which was not contained in the subsequent amendment. There can be no middle ground.

There can be no retrogression to take back part of what has been abandoned any more than to take back the whole.

"It may be that it was a mistake on the part of the applicant to limit the invention to the extent only of the claim contained in the specification annexed to the patent; but with this, of course, we have nothing to do here. The only question for us is, whether the claim now put forward on his behalf was so far contained in his original claims that were abandoned by him as to be itself thereby necessarily abandoned. And this we must answer in the affirmative; for the abandonment of the whole necessarily implies and involves the abandonment of all the parts except such as are expressly and specifically retained."

This was approved in In re Lacroix, 30 App. D. C. 299.

A consideration of these authorities leads us to this inquiry: Were the elements relied upon to constitute invention in said claim 3, namely, "outward flanges and tubes having inner end portions abutting against and fastened to said outward flanges," included, either specifically or broadly, within the scope of canceled claims 1 and 2? A reading of these canceled claims discloses that in no respect can these inventive elements be said to be so included. The invention claimed by said rejected claim 3 is not in any sense a broadening of the subject-matter of said canceled claims, but constitutes a distinct subject-matter, disclosed, but not claimed, in the original application and patent. In so far, therefore, as the board concluded that the principle of estoppel is applicable in the case at bar, we find ourselves out of harmony with that view.

For the reasons stated, the decision of the Board of Appeals is affirmed as to rejected claims 1 and 4, and reversed as to said claim 3.