50 CCPA

**Application of George J. HANDEL, Jr.**

**Patent Appeal No. 6902.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1963.

Roger L. Hansel, Stevens, Davies, Miller & Mosher, Washington, D. C., William Hintze, Harrisburg, Pa. (Truman S. Safford, New York City, and Marshall M. Holcombe, Harrisburg, Pa., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 4–6 of appellant's application Ser. No. 755,830, filed August 1, 1958, for reissue of his patent No. 2,-705,797, granted April 12, 1955, for "Terminal Applicator Construction."

The sole issue in the case is whether the appealed claims are "for the invention disclosed in the original patent," as required by 35 U.S.C. § 251, the statute governing the granting of reissues. The Patent Office held they are not and appellant argues to the contrary.

The invention disclosed in the original patent [1] is a machine for applying electrical terminals to pieces of wire, the terminals being fed by the machine from a reel to the point of application in con-

[1]. The patent is not included in the record. The Patent Office Solicitor's brief admits, however, that the specifications of the patent and of the application are identical. We presume this admission includes the drawings. There were 3 original patent claims which are allowed claims in this reissue application, viz., claims 1, 2, and 3, the same numbers they have in the patent.

tinuous strips from which they are severed, as applied, one at a time. The need appellant sought to fill by his invention was for a machine capable of being variously set up to apply automatically "a considerable variety of electrical terminals or connectors." To this end, the machine, which is in the nature of a stamping press, is arranged to employ a variety of sets of matched crimping and shearing dies suited for use with the different terminals or connectors; and the feeding mechanism, which advances the strips of terminals or connectors one unit at a time, is made adjustable. Two of the more significant objects of the invention stated in the application read as follows:

"Another object is the provision in a press of a practicable apparatus for applying terminals in which any one of several terminal *feeding relationships* may be selected and *with which* any one of several terminal *applying assemblies* may be combined all as a matter of mere routine. * * * A still further object resides in the provision of a *feeding assembly* wherein the length of feed may readily and accurately be adjusted." [Emphasis ours.]

It is not questioned that the specification and drawings fully describe a machine which carries out these objects.

### The Claims

The Patent Office admits that appealed claims 4, 5, and 6 incorporate entirely (with the exception of changing the word "mechanism" to "machine") the language of original patent claims 1, 2, and 3 and differ therefrom in subject matter only in that each of the appealed claims adds one or two elements to the patent claim on which it is based. We quote as acceptable the solicitor's explanation:

"Claim 4 adds to claim 1 a storing means (the reel) and a means for sequentially feeding the connector strip, the latter having an adjustable stroke. Claim 5 is similar in scope to claim 4, except that it omits the storing means of the latter claim. Claim 6 likewise omits the storing means, but specifies that the feeding means or mechanism has 'a plurality of settings corresponding to different feed strokes required by the different size and shape strip connectors.' "

The solicitor also states, and we agree, that the issue before us is the same as to all claims, notwithstanding their slight differences.

### The Rejection

There is some confusion as to the rejection before us.

The examiner rejected the claims on two grounds: (1) "that they are drawn to the old combination of a fastener applicator and feed means," citing two references to show the combination; (2) "that the original patent was not partially inoperative and defective by reason of applicant's claiming less than he had a right to claim in his patent." [2]

2. The reference here is obviously to the opening clauses of 35 U.S.C. § 251, the first paragraph of which reads as follows:
"Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and, amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue."
Quoting from McCrady, Patent Office Practice, 4th Ed., 1959, p. 309, "The term 'inoperative' has been construed to mean inoperative adequately to protect the invention, which may be due to failure of the solicitor to understand the invention * * *." There is no issue of new matter in this case. At oral argument the solicitor admitted that the reissue claims on appeal are *narrower* than the claims of the original patent.

The board reversed ground (1), saying, "we shall not sustain the rejection of claims 4, 5, and 6 on the ground that the recited combination is disclosed by either of the * * * references." That rejection is, therefore, clearly out of the case.

As to ground (2) it is necessary to recite some added facts [3] before the statements of the board can be understood. It appears that at some time during the prosecution of the application for the original patent the examiner required "division" (restriction) as between claims to "1. Combination of applicator and feed; 2. Subcombination of applicator." The examiner says the applicant elected to prosecute claims to the subcombination, which resulted in the allowance of the three claims of the patent and in the issuance of the patent. In his Answer, in connection with his second ground of rejection, the examiner said:

"The claims appealed herein are drawn to the same combination as the nonelected claims of the original application. The claims set forth the combination of a connector applicator and a feed mechanism. The present claims emphasize a different detail ["feature," the board called it] of the feed mechanism than those of the combination claims of the original application, however, that does not change the basic combination. * * *

Hence, the defect of the original claims would seem to be that they claimed *more*, not less, as the examiner said, than the applicant had a right to claim.

The examiner's error seems to be traceable to the reissue oath. While in its entirety the oath makes it perfectly clear that appellant's purpose was to *narrow* his claims (at least claims 4, 5, and 6) to avoid the possibility of their being invalid in view of an alleged prior public use, he too asserted that his patent was partly inoperative "by reason of his claiming less than he had a right to claim in his patent." The term "less" appears to have been used in the sense of *fewer* claims than he could properly have made, rather than in the statutory sense of subject matter included within the claims.

"Therefore, it is not seen that the patent is defective and partially inoperative by reason of applicant claiming less [sic] than he had a right to claim."

It will thus be seen that underlying the examiner's refusal of the claims was his requirement for restriction and the applicant's election in the original application, including cancellation of nonelected claims. The board stated its understanding of the examiner's position as follows:

"He has taken the position that appellant may not obtain claims by reissue that could have been obtained in a divisional application properly filed in response to the requirement for division in the original application."

The board then pointed out that appellant's argument was that since the appealed claims and the nonelected claims were to *distinctly different combinations* he was *not estopped* to present the instant claims in a reissue application.

Against this background, we now quote the board's ruling on the examiner's second ground of rejection:

"It is established that an applicant is estopped from obtaining in a reissue application a claim which because of a requirement for division, with which he acquiesced, was not allowable in his original application. [Cases cited.] However, since the

Since the patent claims have been retained, neither more nor less is being claimed. The narrower appealed claims are simply a hedge against possible invalidity of the original claims should the prior use be proved, which is a proper reason for asking that a reissue be granted.

3. These facts are assumed on the basis that the examiner stated them in his Answer and the appellant has not denied them. However, we have nothing in the record before us on the basis of which we can see these facts for ourselves since they appear only from the record of the prosecution of the application resulting in the issuance of the patent, no part of such record having been included in the record on appeal.

instant claims recite a different character of connector feed mechanism from that recited in the claims cancelled in the original application, *we do not regard the requirement for division and cancellation of nonelected claims in the original application as constituting an estoppel with respect to the appealed claims.*" [Emphasis ours.]

In view of this statement, as well as other discussion of the matter in the board's opinion, we cannot conclude otherwise than that the board rejected the entire rationale of the examiner's second rejection, which was predicated on the requirement for restriction and appellant's acceptance thereof.

The board nevertheless sustained the examiner's rejection of claims 4, 5, and 6, but on a basis never suggested by the examiner, and one which we regard, on the whole, as contrary to law. It said (emphasis ours):

"Nevertheless, it is fundamental that a reissue must pertain to the same invention as that recited *in the claims of the patent.* Parker & Whipple Company v. Yale Clock Company, 123 U.S. 87, 8 S.Ct. 38, 31 L. Ed. 100; 41 OG 811; 1887 CD 584. The *claims of the patent* recite a 'connector applicator mechanism' for applying connectors to wires by means of severing and crimping die assemblies and do not comprehend any means for feeding the connectors to the mechanism. The appealed claims recite a 'connector applicator machine' and include, in addition to the aforementioned connector applicator mechanism, a mechanism for feeding connectors to said applicator mechanism. Consequently, by the introduction of an additional element

*the appealed claims are not directed to the same invention recited in the claims of the patent.* Furthermore, we find in the patent no clear evidence of an intention to claim the particular subject matter of the appealed claims. Accordingly, we are of the opinion that the appealed claims are not merely a restatement of *the invention claimed in the patent* in narrower form but are a recitation of a different invention."

On request for reconsideration the board clearly reaffirmed its position saying that its decision had been that the appealed claims are directed to "a different invention *from that recited in the claims of the patent* sought to be reissued." (Emphasis ours.) It also reaffirmed its finding of *no intent* to claim the subject matter of the appealed claims but amplified its position by stating that this finding was based on an examination of the claims presented for prosecution in the application for the issued patent.[4]

On the basis of the foregoing holdings in the tribunals below, we arrive at the following conclusions as to the rejection which is before us. The board clearly reversed ground (1) based on old combination. The board effectively reversed ground (2) by entirely disagreeing with the only reasoning used by the examiner to support it. The board said, however, that it was "not convinced of any fundamental error in the Examiner's position," which we can take in this context as meaning no more than that he was right in rejecting the claims. But the board substituted for the examiner's reasoning an entirely different statutory basis of its own for holding that appellant could not have claims 4, 5, and 6 in a reissue.

The examiner's reason was that appellant had not shown that he had claimed

4. It is difficult to understand how the board could have expected to find, for the purpose of *supporting* a reissue, an *intent* to claim in claims presented in *but cancelled from* the patent application in view of a long line of reissue cases holding that deliberate cancellation of claims in the original application, to obtain issuance, is not inadvertence (error) and therefore *bars* the grant of *similar* claims in the reissue, even though the claims were cancelled merely in response to a requirement for division. See McCrady, op. cit. fn. 2, pp. 311-312.

*less* than he had *a right to claim in the original patent,* a reason based on section 251 (see fn. 2, supra) coupled with an estoppel due to cancellation of nonelected claims. It appears clearly to us that the board substituted for the examiner's reasons for saying appellant had not brought himself within section 251, which reasons it rejected, entirely new reasons of its own, which were two: First, that the patent claims and the reissue claims are not for the same invention, *on the basis of a comparison of both sets of claims alone;* second, that looking to the patent as a whole a clear *intention* to claim the subject matter of the appealed claims does not appear.

■ We stated at the beginning of this opinion that the issue before us is whether the claims are for the invention disclosed in the patent. We say this notwithstanding the Patent Office Solicitor's opening statement in his brief that the appeal is from a decision affirming a rejection on the ground that appellant has not shown that he claimed less than he had a right to claim in his patent. Only in a very technical sense is the solicitor correct, because the examiner made such a rejection and the board held it not to be "fundamentally" in error and affirmed it. But in reality the board affirmed it only by reversing all the underlying reasoning of the examiner and substituting its own, relying on the same *section* of the statute but not on the same clause. The examiner's rejection was left an empty shell notwithstanding the affirmance.

■ It seems to us that our function is to pass only on such grounds of rejection as have not been reversed by the highest tribunal of the Patent Office. In the instant case that means that the only grounds before us are the final reasons given by the board for refusing the appealed claims. We believe the issue to be as we have stated it.

### Our Opinion

■ The board erred in applying the wrong test to determine whether appel-lant's claims are for "the invention disclosed in the original patent," which is the only provision of section 251 relied on by the Patent Office. In looking only to the *claims* of the patent it disregarded the express command of the statute, which is to look at the disclosure. The cases relied on by the board, United States Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corporation, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105, and Parker and Whipple Company v. Yale Clock Company, 123 U.S. 87, 8 S.Ct. 38, 31 L.Ed. 100, 1887 C.D. 584, do not support its position. Although these cases were prior to the enactment of the Patent Act of 1952, which changed the words of the prior law, "for the same invention," to the words above quoted, even they stand for the proposition that the entire disclosure of the original patent is to be considered in determining what the patentee intended to claim and what invention the patent discloses.

■ We are constrained to agree with appellant that if the board's view were to prevail, the reissue statute would be of very little practical effect, for, by elementary principles of claim interpretation, whenever an element or other limitation is added to or taken from a claim it becomes a claim to a different invention. Yet the whole purpose of the statute, so far as claims are concerned, is to permit limitations to be added to claims that are too broad or to be taken from claims that are too narrow. That is what the statute means in referring to "claiming more or less than he had a right to claim."

■ The decisions of this court, both before and after the effective date of the 1952 act, are also to the effect, as stated in In re DeJarlais, 233 F.2d 323, 43 CCPA 900, 904, that "It is also well settled that the same invention means whatever invention was described in the original patent, and which appears to have been intended to be secured thereby." See In re Mayo, 129 F.2d 700, 29 CCPA 1192, and In re Murray, Jr., 64 F.2d 788, 20

CCPA 1046. In the District Court for the District of Columbia the same rule was applied in Kinnear v. Marzall, D.C., 95 F.Supp. 55. The Patent Office Solicitor admits that in these cases the courts found it sufficient to examine the specifications and claims but urges us, over several pages of brief, to "give due weight to the 'division aspect' of the prosecution history of the patented application * * *." By this he apparently means the following, with which he concludes his brief:

> "Appellant showed a clear intent not to secure the invention directed to the claimed combination by canceling claims directed thereto in the patented application. In effect, he conceded away the right to claim the combination in that application. Since such right is a basic requirement of Section 251, it is submitted that there is no legal basis for granting a reissue of the original patent."

Since the Patent Office has not seen fit to include in the record a single one of the allegedly cancelled claims we do not see how we could, even if we would, determine what appellant may have "conceded away." But this is of no moment inasmuch as the board disposed of this point and put it beyond our reach in its opinion on request for reconsideration, wherein it said:

> "We further pointed out in our decision that *we found no claim presented during the prosecution of [the] patent application directed to a connector applicator machine of the character recited in the appealed claims* and consequently found no *clear evidence of appellant's intention to therein claim the subject matter of the herein appealed claims.*" [Emphasis ours.]

It would appear, therefore, that appellant has been adjudged by the board never to have made a claim to the subject matter of the appealed claims or of that character. Consequently he never cancelled such a claim. It follows that the solicitor's argument is directly contra-

dicted by the finding of the board, based, moreover, on information to which we have no access.

 As for the board's holding on intent, we find it to be contrary to the clear indication of the specification of the original patent, which the board failed to take into consideration, particularly the statement of objects quoted early in this opinion. They clearly point to the subject matter of the appealed claims as part of appellant's invention, especially when read with the detailed description of the machine and its mode of operation. Since we find this to be sufficient to sustain appellant's right to claim the subject matter of the appealed claims, we find it unnecessary to consider his other arguments based on the claims of his original patent.

The decision of the board is reversed.

Reversed.