# United States Court of Appeals for the Federal Circuit

---

**IN RE YASUHITO TANAKA**

---

2010-1262

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences in application Serial No. 10/201,948.

---

Decided: April 15, 2011

---

CHARLES GORENSTEIN, Birch, Stewart, Kolasch & Birch LLP, of Falls Church, Virginia, argued for appellant. With him on the brief were ROBERT J. WEBSTER and MICHAEL B. MARION.

BENJAMIN D.M. WOOD, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor, and NATHAN K. KELLEY, Associate Solicitor.

R. CARL MOY, William Mitchell College of Law, of St. Paul, Minnesota, for amicus curiae William Mitchell College of Law Intellectual Property Institute.

CARTER G. PHILLIPS, Sidley Austin LLP, of Washington, DC, for amicus curiae Merck & Co., Inc. With him on

the brief were JEFFREY P. KUSHAN and PETER S. CHOI. Of counsel on the brief was EDWARD W. MURRAY, Merck & Co., Inc, of Rahway, New Jersey.

HENRY C. DINGER, Goodwin Procter LLP, of Boston, Massachusetts, for amicus curiae Teva Pharmaceuticals USA, Inc. With him on the brief were FREDERICK H. REIN and ERIC H. YECIES, of New York, New York.

---

Before BRYSON, LINN, and DYK, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LINN.

Dissenting opinion filed by *Circuit Judge* DYK.

LINN, *Circuit Judge.*

Yasuhito Tanaka ("Tanaka") appeals from a precedential decision of the Board of Patent Appeals and Interferences ("Board") holding that a reissue application that retains all of the original patent claims and adds only narrower claims does not present the type of error correctible by reissue under 35 U.S.C. § 251. *See Ex parte Yasuhito Tanaka*, No. 2009-000234 (B.P.A.I. Dec. 9, 2009) ("*Decision*"). Because the Board's determination is contrary to longstanding precedent of this court, this court reverses and remands.

BACKGROUND

U.S. Patent No. 6,093,991 ("the '991 patent") issued on July 25, 2000, with independent claim 1 and dependent claims 2-7. It describes an "alternator pulley" that uses a one-way clutch to improve the power generation efficiency of an automobile's alternator. Exactly two years after its issue date, Tanaka filed reissue application Serial No. 10/201,948 ("the '948 application") in the

United States Patent and Trademark Office ("PTO") seeking to broaden the scope of independent claim 1 of the '991 patent. Tanaka's declaration in support of the broadening reissue stated that "the originally-presented claims did not adequately define the invention because they were more specific than necessary" and thus "the claims of the original patent cover less subject matter than we were entitled to claim." J.A. 447.

Over the course of prosecution of the reissue application, Tanaka gave up his attempt to broaden claim 1 and instead presented for reexamination unamended original claims 1-7 and new claim 16, dependent on claim 1. On September 24, 2007, Tanaka submitted a substitute reissue declaration stating that "because I did not fully appreciate the process of claiming according to U.S. practice, I did not realize that I had claimed more or less than I was entitled to claim" and "the originally presented claims did not adequately define the invention because they were more specific than necessary." J.A. 219-20.

On October 10, 2007, the examiner rejected claims 1-7 and 16 with the following explanation:

> The nature of the defect is that the error specified in the oath filed 9/24/2007 is not an error correctible by a reissue. The Applicant has not specified an error that broadens or narrows the scope of the claims of issued patent 6093991. The original claim 1 remains in the current reissue application, therefore the broadest scope of the patent remains the same.

J.A. 207. This rejection was made final and Tanaka appealed to the Board.

In a precedential opinion with a panel of seven judges, the Board affirmed the examiner's rejection. The Board found no controlling authority to guide resolution of the precise question at issue: whether the examiner "erred in determining that the presentation of a narrower claim in a reissue application that still contains all of the original patent claims does not present the type of error correctible by reissue under 35 U.S.C. § 251." *Decision* at 5. Interpreting the language of § 251 itself, the Board held that the statute "disallow[s] reissue applications that simply add narrow claims to the reissue patent when no assertion of inoperativeness or invalidity for the reasons set forth in § 251 can be made by the patentee . . . ." *Decision* at 24. The Board thus affirmed the examiner's rejection, finding that Tanaka was impermissibly seeking an additional claim on reissue "in order to hedge against the possible invalidity of one or more of the original claims." *Decision* at 19-21.

Tanaka timely appealed. This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

### DISCUSSION

In the absence of disputed facts, this court reviews the legal question of whether an applicant satisfies the statutory requirements of 35 U.S.C. § 251 de novo. *In re Serenkin*, 479 F.3d 1359, 1361 (Fed. Cir. 2007).

On appeal, Tanaka argues that the Board erred in concluding that reissue is not a remedy available under these circumstances. Tanaka argues that the Board's conclusion is contrary to the binding precedent of this court and is a direct departure from long-established practices of the PTO.

The PTO responds that the Board correctly concluded that reissue is not an available remedy in this case. The PTO asserts that omission of a dependent claim does not render a patent "partially inoperative" under § 251, because the subject matter covered by the dependent claim is necessarily covered by its antecedent independent claim. Nor does the omission of a dependent claim according to the Director, constitute "claiming more or less than the patentee had a right to claim in the patent" as required by the statute. The Director argues that because binding precedent makes clear that "claiming more or less" in § 251 refers to the scope of protection afforded by the patent, an additional dependent claim neither adds to nor detracts from the scope of protection afforded by the original patent. Because Tanaka's purported error is neither one of overclaiming nor underclaiming, the PTO contends that it is not a claiming error cognizable under § 251 and that there is no support for applying § 251 beyond its literal scope in this case.

This court concludes that the Board's determination is contrary to longstanding precedent of this court and flies counter to principles of stare decisis. Section 251, which governs the reissue of defective patents, provides in pertinent part:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original pat-

ent.  No new matter shall be introduced into the
application for reissue.

35 U.S.C. § 251 (emphases added).

As interpreted by this court, the reissue statute im-
poses two requirements for properly invoking the reissue
process.  First, the original patent must be "wholly or
partly inoperative or invalid."  *Hewlett-Packard Co. v.
Bausch & Lomb, Inc.*, 882 F.2d 1556, 1564 (Fed. Cir.
1989).  Second, "the defective, inoperative, or invalid
patent" must have arisen "through error without decep-
tive intent."  *Id.* at 1565.  There is no dispute in this case
that any defect arose without deceptive intent.

Nearly a half century ago, our predecessor court, the
Court of Customs and Patent Appeals, clearly stated that
adding dependent claims as a hedge against possible
invalidity of original claims "is a proper reason for asking
that a reissue be granted."  *In re Handel*, 312 F.2d 943,
946 n.2 (CCPA 1963).  The basis for the reissue applica-
tion in *Handel* was nearly identical to that in this case.
The patentee had mistakenly failed to include narrow
claims that he had a right to claim and later sought
reissue to obtain those narrower claims without proposing
to cancel any broader claims encompassing the claims
sought to be added.  The proposed reissue claims differed
from the existing claims simply by the inclusion of addi-
tional limitations.

Judge Giles S. Rich wrote the *Handel* decision revers-
ing the Board's rejection of the reissue application.  He
explained that the reissue claims involved subject matter
disclosed in the specification and thus were properly
directed to "the invention disclosed in the original patent."
*Id.* at 944.  In a footnote, Judge Rich remarked that "[t]he
term 'inoperative' has been construed to mean inoperative
adequately to protect the invention, which may be due to

failure of the solicitor to understand the invention." *Id.* at 945 n.2 (quoting McGrady, *Patent Office Practice* 309 (4th ed. 1959)). Judge Rich added that because the original patent claims were all retained in the reissue application the "term 'less' [in Handel's reissue declaration] appears to have been used in the sense of *fewer* claims than he could properly have made, rather than in the statutory sense of subject matter included within the claims." *Id.* at 946 n.2 (emphasis in original). Thus "[t]he narrower appealed claims are simply a hedge against possible invalidity of the original claims should the prior use be proved, which is a proper reason for asking that a reissue be granted." *Id.* While this court has since characterized that view as dictum, it has not departed from it.

For example, in *In re Muller*, 417 F.2d 1387 (CCPA 1969), the Court of Customs and Patent Appeals reversed a rejection under § 251 of a reissue application that included all of the original patent claims and four additional narrower claims. The issue presented to the court was whether the new claims were improper for reissue as defining a species different from that of the original claims. The court ruled in favor of the applicant and held:

> By including an additional limitation in each of four new claims here, appellant is not shifting to different species; he is simply defining his invention more narrowly, which he could have done but failed to do in the prosecution of the patent. We find here no deliberate renunciation of subject matter, and we do not reach the question of whether a deliberate non-election of species can be remedied by reissue. We conclude that the reissue oath here shows that the failure to present the narrower claims was through error without any deceptive intention. The oath was therefore sufficient under 35 U.S.C. § 251.

*Muller*, 417 F.2d at 1391. Although the court did not expressly address the *Handel* case or restate the principle set forth there, the plain implication of the court's statement is that the court regarded the inclusion of dependent claims (i.e., "species") to be proper in a reissue proceeding, assuming that it was accompanied by an oath asserting that the "failure to present the narrower claims was through error without any deceptive intent." *Id.*

Years later, in *Hewlett-Packard*, this court had before it an application that, like the '948 application here, included all the original claims. 882 F.2d at 1565. Explicitly commenting on the language of footnote 2 in *Handel*, the panel in *Hewlett-Packard* observed that "the practice of allowing reissue for the purpose of including narrower claims as a hedge against the possible invalidation of a broad claim has been tacitly approved, at least in dicta, in our precedent." *Id.* The court then went on to "assume that that practice is in accordance with the remedial purpose of the statute," but upheld the invalidation of narrower reissue claims on an entirely different basis—namely, the factual inaccuracy of the affidavits submitted to the PTO in support of the reissue application. *Id.* at 1565-66.

Even though the rule that adding a dependent claim as a hedge against possible invalidity is a proper reason to seek reissue has seemingly never been formally embodied in a holding of this court or its predecessor, articulation of the rule in *Handel* was not simply a passing observation—it was a considered explanation of the scope of the reissue authority of the PTO in the context of a detailed explanation of the reissue statute. Based on this court's adoption of that rule and its adherence to the rule in both *Muller* and *Hewlett-Packard*, this court rejects the Board's contrary ruling.

This court also rejects the PTO's assertion that the omission of a narrower claim from an original patent does not constitute an error under § 251 because the omission of a dependent claim does not render the patent inoperative. While the Board correctly recognized that a patent is inoperative under § 251 if it is ineffective to protect the disclosed invention, the Board improperly assumed that Tanaka's original patent cannot be deemed partly inoperative in the absence of claim 16, whose scope is subsumed by claim 1, from which it depends. *Decision* at 17-18. This court, however, has recognized that "each claim is a separate statement of the patented invention." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995). And each claim of a patent has a purpose that is separate and distinct from the remaining claims. Claims of narrower scope can be useful to clarify the meaning of broader, independent claims under the doctrine of claim differentiation. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). And dependent claims are also less vulnerable to validity attacks given their more narrow subject matter. Thus, the omission of a narrower claim from a patent can render a patent partly inoperative by failing to protect the disclosed invention to the full extent allowed by law.

Finally, this court rejects the Board's conclusion that adding a single dependent claim to the originally issued claims is equivalent to the disallowed practice of filing a "no defect" reissue. *Decision* at 20-23. This court in *In re Dien* addressed the PTO's former practice of allowing patentees to file a reissue application for the purpose of having the claims reexamined in light of newly discovered prior art without alleging a defect nor seeking any change in the patent. 680 F.2d 151, 152 (CCPA 1982). The court criticized this practice as permitting a patentee to obtain an advisory opinion from the PTO. *Id.* at 154. Here, however, there is no dispute that Tanaka has admitted error in the original prosecution, pointing out that he

neglected to seek a narrower dependent claim to which he was entitled. In addition, unlike the practice of "no defect" reissue, Tanaka's reissue application requested changes to his patent in the form of a new dependent claim. Applying for a reissue that adds only narrower claims without amending any of the original claims is not the same as a "no defect" reissue.[1]

---

[1] The dissent's reliance on *Gage v. Herring*, 107 U.S. 640 (1883) for the proposition that a reissue is not proper in the absence of a surrender of subject matter is, with all due respect, misplaced. *Gage* did not address whether a reissue required that something be surrendered in the original claim(s) but instead invalidated a newly added claim that was broader than the original claim under a statute that at that time permitted correction of claims by reissue for the purpose of narrowing the claims; i.e., where the patentee claimed "more than he had a right to claim as new." *Id.* at 644-45 (citing Act of July 8, 1870, ch. 230, § 53, 16 Stat. 198). Although the Supreme Court had interpreted that statute to permit broadening reissue in certain circumstances, the Court in *Miller v. Brass Co.* cautioned that "[r]eissues for the enlargement of claims should be the exception and not the rule." 104 U.S. 350, 355 (1882). Moreover, the dissent's statement that "[h]ere, the applicants surrender nothing; they attempt to retain their rights under the original patent in their entirety" ignores applicant's compliance with § 251, which, as the dissent recognizes, requires an offer to surrender the entire original patent upon the filing of a reissue application. *See* 35 U.S.C. § 251; *Manual of Patent Examining Procedure* § 1440-58 (7th rev. 2008) ("[A]n original claim, if re-presented in a reissue application, will be fully examined in the same manner, and subject to the same rules as if being presented for the first time in an original non-reissue, nonprovisional application.").

Teva argues as amicus that the public has an interest in preventing patentees from seeking reissue only to add narrower claims because such practice limits the public's ability to rely on what is actually claimed in an issued patent. This court, however, sees no problem that is not already addressed by the equitable intervening rights statute, 35 U.S.C. § 252, "under which a court may protect investments made before reissue 'to the extent and under such terms as the court deems equitable.'" *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1373 (Fed. Cir. 2009) (quoting 35 U.S.C. § 252).

This court recognizes that the reissue statute "was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute de novo his original application." *Serenkin*, 479 F.3d at 1362 (quoting *In re Weiler*, 790 F.2d 1576, 1582 (Fed. Cir. 1986)). However, the narrow rule relating to the addition of dependent claims as a hedge against possible invalidity has been embraced as a reasonable interpretation of the reissue statute by this court and its predecessor for nearly fifty years without any obvious adverse consequences. To deviate from that long-standing interpretation would be contrary to the doctrine of stare decisis and is unwarranted.

CONCLUSION

For the foregoing reasons, this court reverses the judgment of the Board and remands for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

---

## IN RE YASUHITO TANAKA

---

### 2010-1262

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences in application Serial No. 10/201,948.

---

DYK, *Circuit Judge*, dissenting.

Respectfully, I dissent. I would affirm the Board's holding that the addition of a narrower claim in a reissue application is not a proper basis for reissue under 35 U.S.C. § 251 if the application still contains all of the original patent claims.

### I

The majority here bases its decision on the assertion that "the Board's determination is contrary to longstanding precedent of this court and flies counter to principles of stare decisis." Maj. op. at 5. To support this assertion the majority relies on *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556 (Fed. Cir. 1989), *In re Muller*, 417 F.2d 1387 (CCPA 1969), and *In re Handel*, 312 F.2d 943 (CCPA 1963). In my view, none of these cases re-

solves the issue before us. Where, as here, the prior cases have "never squarely addressed the issue, and have at most assumed the applicability of [a particular] standard," we are not bound by those decisions and remain "free to address the issue on the merits" in subsequent cases. *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see also Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1308 n.9 (Fed. Cir. 2008); *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*, 357 F.3d 1294, 1307 (Fed. Cir. 2004); *United States v. County of Cook, Ill.*, 170 F.3d 1084, 1088 (Fed. Cir. 1999).

In *Handel*, the examiner rejected the reissue claims in part because the addition of narrower claims without modification of the original claims was not a proper ground for reissue. 312 F.2d at 945. The Board reversed that ground for rejection, holding instead that the reissue claims were improper because they were not "directed to the same invention recited in the claims of the patent." *Id.* at 947. On appeal, our predecessor court made clear that its "function [was] to pass only on such grounds of rejection as [had] not been reversed by the [Board]." *Id.* at 948 Thus, whether the addition of narrower claims was a proper grounds for reissue was "clearly out of the case." *Id.* at 946. The court stated explicitly that the "sole issue in the case [was] whether the [reissue] claims [were] 'for the invention disclosed in the original patent,' as required by 35 U.S.C. § 251." *Id.* at 944. Though the court stated in a footnote that reissue is proper when the only change to the original patent is the addition of narrower claims as "a hedge against possible invalidity," it did not squarely address the issue. *See id.* at 945 n.2.

In *Muller*, the reissue claims were rejected in part because "they [were] drawn to species which were not elected under a restriction requirement in the original

application." 417 F.2d at 1388. The court reversed because it concluded that the applicant was "not shifting to [a] different species." *Id.* at 1391. Far from resolving the issue before us today, the court said nothing about whether the addition of a narrower claim in a reissue application that still contains all of the original patent claims is proper.

In *Hewlett-Packard*, we made clear that we were not deciding whether to allow reissue for the purpose of including narrower claims as a hedge against invalidity. 882 F.2d at 1565. We noted that, "[f]or purposes of this case, we will assume that that practice is in accordance with the remedial purpose of the [reissue] statute," but stated explicitly that "[w]e need not decide here whether omission of narrow claims . . . meets . . . the requirement for error [under § 251]." *Id.*

None of these cases squarely addressed or decided whether seeking to include narrower claims while retaining the original claims is a proper basis for reissue under § 251. In *Hewlett-Packard* we explicitly stated that we were not deciding the issue. The earlier cases, moreover, did not address the Supreme Court decision in *Gage v. Herring*, 107 U.S. 640 (1883), discussed below. As a result, we are free to decide the issue in this case.

II

Both the language and the purpose of the statute clearly support the PTO's position. The reissue statute explicitly restricts reissue to circumstances in which the "patent is, through error . . . , deemed wholly or partly inoperative or invalid." 35 U.S.C. § 251. Thus, the statute is intended to "provid[e] the patentee with an opportunity to correct errors" within the patent. *In re Graff*,

111 F.3d 874, 877 (Fed. Cir. 1997). Here, the applicants made no correction to the original patent; instead, they merely attempted to add claims to the original patent. The required premise of the statute that the original claims were "deemed wholly or partly inoperative or invalid" as the result of an "error" is entirely missing. 35 U.S.C. § 251. There is no assertion that correction of anything in the original patent was required. The Supreme Court in *Gage* held that under such circumstances reissue is unavailable. 107 U.S. at 645.

*Gage* involved a patent that claimed "an improvement in [a] means for cooling and drying meal." *Id.* at 640. The original claims recited a combination of elements, including a chest, designated J, which "collect[ed] and save[d] the lighter part of the meal thrown upwards by the [drying] fan," and a rotating shaft within the chest, designated K, which "convey[ed] all the meal, after it ha[d] been cooled, dried, and collected, to the elevator." *Id.* at 643–44. The applicant contended that reissue was proper because "the original patent was too much restricted by including in the [claim] elements [J and K] which were no part of the real invention." *Id.* at 645. The applicant sought to correct this supposed error via reissue by adding a new broader claim, which deleted two of the original claim elements (J and K), while retaining the original claims. *Id.* The Court concluded that there was no mistake or error in the original patent as manifested by the retention of the original claims without modification. *Id.* The Court noted that while the applicant could have demonstrated an error by modifying the original claim, he chose not to do so. *Id.* The Court stated:

> It is plausibly suggested that 'the claim could be made perfect in form, and consistent with the description of all that portion of the apparatus

which relates to the invention, by simply striking out the letter of designation for the upper chest, J, and the letter of designation for the conveyor shaft of that chest, K.' *But that the inventor did not and does not intend so to amend his claim is conclusively shown by his having repeated the same claim, including these very letters of designation, in the [retained] claim of the reissued patent. His attempt is, while he retains and asserts the original claim in all particulars, to add to it another claim which he did not make, or suggest the possibility of, in the original patent . . . .*

*To uphold such a claim . . . would be to disregard the principles governing reissued patents,* stated upon great consideration by this court at the last term in the case of *Miller v. [Bridgeport] Brass Co.*, 104 U.S. 350, and since affirmed in many other cases.

*Id.* (emphases added). The cited decision in *Miller* similarly made clear that "a claim may be enlarged in a reissued patent, [but] this can only be done when an actual mistake has occurred; not from a mere error of judgment."[1] *Miller v. Bridgeport Brass Co.*, 104 U.S. 350, 355

---

[1] Contrary to the majority's assertion, the Court in *Gage* did not invalidate the newly added claim because the statute in effect at that time did not permit correction of claims by reissue for the purpose of broadening the claims. The Court explicitly noted that the applicant could have corrected the alleged error in his claims by amending the original claim to broaden it in the desired manner. *Gage*, 107 U.S. at 645. Even though the statute in effect at the time of *Gage* did not explicitly permit broadening reissues, the Supreme Court, in cases arising prior to *Gage*, had interpreted the statute to permit correction of the claims by reissue for the purpose of

(1881). The applicants here attempt to do virtually the same thing as in *Gage*. By retaining the original claims without alteration or amendment, the applicants have admitted that there was no error in the original patent. The fact that no error is being corrected here, as in *Gage*, makes reissue unavailable in this case.

While our decisions, and those of our predecessor court, have held that a reissue may sometimes be proper where the original claims have not been revised, those decisions make clear that some correction of an error affecting the original claims is required. In other words, the correction of that error must have a direct and identifiable effect on the applicant's rights under the original patent. For example, where applicants were permitted to perfect priority under 35 U.S.C. §§ 119 and 120, the resulting correction to the patent had a direct impact on the applicant's rights under the original patent because all of the claims were given a new priority date. *See Brenner v. Israel*, 400 F.2d 789, 790–91 (D.C. Cir. 1968) (permitting an applicant to perfect foreign priority under 35 U.S.C. § 119 via an application for reissue); *Fontijn v.*

---

broadening the claims. *See Miller*, 104 U.S. at 354–55; *Battin v. Taggert*, 58 U.S. 74, 84 (1854); *see also Topliff v. Topliff*, 145 U.S. 156, 167 (1892); 4A-15 Donald S. Chisum, Chisum on Patents § 15.02[9][a] (2011) (noting that, though the Patent Act of 1952 was the first statute to explicitly permit broadening reissue, "the Supreme Court had read [the prior statutes] as encompassing underclaiming as well as overclaiming"). As noted in the text, *Miller*, which is the lead case permitting the correction of the claims by reissue for the purpose of broadening, is in fact relied upon by the Court in *Gage*. Thus, in *Gage*, the Court found fault not with the fact that the applicant was attempting to broaden his claims, but with the fact that he did so without making any change to the original patent.

*Okamoto*, 518 F.2d 610, 621–23 (CCPA 1975) (permitting an applicant to perfect a priority claim under 35 U.S.C. § 120). And in a case where the applicant was permitted to correct the lack of antecedent basis in a claim, the correction directly affected the applicant's rights under the patent because it preserved the validity of the claim. *See In re Atenpohl*, 500 F.2d 1151, 1156–57 (CCPA 1974). In each of those cases a correction was made to the original patent.

Here, the addition of the dependent claims has no impact on the applicants' rights under the original patent. The original claims were not changed, and the addition of new claims has no effect on the applicants' rights under the original claims. The applicants effectively attempt to retain their rights under original patent while securing a second patent which covers the subject matter of the dependent claims.

This is, moreover, directly contrary to another aspect of the reissue statue, which requires "surrender of [the original] patent." 35 U.S.C. § 251. As a condition of reissue, § 251 requires that the applicant relinquish any claim to the original patent—"the patentee has no rights except such as grow out of the reissued patent." *Eby v. King*, 158 U.S. 366, 373 (1895). Here, the applicants surrender nothing; they attempt to retain their rights under the original patent in their entirety.