Opinion for the court filed by Circuit Judge LINN.
Dissenting opinion filed by Circuit Judge DYK.
LINN, Circuit Judge.
Yasuhito Tanaka (“Tanaka”) appeals from a precedential decision of the Board of Patent Appeals and Interferences (“Board”) holding that a reissue application that retains all of the original patent claims and adds only narrower claims does not present the type of error correctible by reissue under 35 U.S.C. § 251. See Ex parte Yasuhito Tanaka, No.2009-000234 (B.P.A.I. Dec. 9, 2009) (“Decision ”). Because the Board’s determination is contrary to longstanding precedent of this court, this court reverses and remands.
Background
U.S. Patent No. 6,093,991 (“the '991 patent”) issued on July 25, 2000, with independent claim 1 and dependent claims 2-7. It describes an “alternator pulley” that uses a one-way clutch to improve the power generation efficiency of an automobile’s alternator. Exactly two years after its issue date, Tanaka filed reissue application Serial No. 10/201,948 (“the '948 application”) in the United States Patent and Trademark Office (“PTO”) seeking to broaden the scope of independent claim 1 of the '991 patent. Tanaka’s declaration in support of the broadening reissue stated that “the originally-presented claims did not adequately define the invention because they were more specific than necessary” and thus “the claims of the original patent cover less subject matter than we were entitled to claim.” J.A. 447.
Over the course of prosecution of the reissue application, Tanaka gave up his attempt to broaden claim 1 and instead presented for reexamination unamended original claims 1-7 and new claim 16, dependent on claim 1. On September 24, 2007, Tanaka submitted a substitute reissue declaration stating that “because I did not fully appreciate the process of claiming according to U.S. practice, I did not realize *1248 that I had claimed more or less than I was entitled to claim” and “the originally presented claims did not adequately define the invention because they were more specific than necessary.” J.A. 219-20.
On October 10, 2007, the examiner rejected claims 1-7 and 16 with the following explanation:
The nature of the defect is that the error specified in the oath filed 9/24/2007 is not an error correctible by a reissue. The Applicant has not specified an error that broadens or narrows the scope of the claims of issued patent 6093991. The original claim 1 remains in the current reissue application, therefore the broadest scope of the patent remains the same.
J.A. 207. This rejection was made final and Tanaka appealed to the Board.
In a precedential opinion with a panel of seven judges, the Board affirmed the examiner’s rejection. The Board found no controlling authority to guide resolution of the precise question at issue: whether the examiner “erred in determining that the presentation of a narrower claim in a reissue application that still contains all of the original patent claims does not present the type of error correctible by reissue under 35 U.S.C. § 251.” Decision at 5. Interpreting the language of § 251 itself, the Board held that the statute “disallow[s] reissue applications that simply add narrow claims to the reissue patent when no assertion of inoperativeness or invalidity for the reasons set forth in § 251 can be made by the patentee.... ” Decision at 24. The Board thus affirmed the examiner’s rejection, finding that Tanaka was impermissibly seeking an additional claim on reissue “in order to hedge against the possible invalidity of one or more of the original claims.” Decision at 19-21.
Tanaka timely appealed. This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).
Discussion
In the absence of disputed facts, this court reviews the legal question of whether an applicant satisfies the statutory requirements of 35 U.S.C. § 251 de novo. In re Serenkin, 479 F.3d 1359, 1361 (Fed.Cir.2007).
On appeal, Tanaka argues that the Board erred in concluding that reissue is not a remedy available under these circumstances. Tanaka argues that the Board’s conclusion is contrary to the binding precedent of this court and is a direct departure from long-established practices of the PTO.
The PTO responds that the Board correctly concluded that reissue is not an available remedy in this case. The PTO asserts that omission of a dependent claim does not render a patent “partially inoperative” under § 251, because the subject matter covered by the dependent claim is necessarily covered by its antecedent independent claim. Nor does the omission of a dependent claim according to the Director, constitute “claiming more or less than the patentee had a right to claim in the patent” as required by the statute. The Director argues that because binding precedent makes clear that “claiming more or less” in § 251 refers to the scope of protection afforded by the patent, an additional dependent claim neither adds to nor detracts from the scope of protection afforded by the original patent. Because Tanaka’s purported error is neither one of overclaiming nor underclaiming, the PTO contends that it is not a claiming error cognizable under § 251 and that there is no support for applying § 251 beyond its literal scope in this case.
*1249 This court concludes that the Board’s determination is contrary to longstanding precedent of this court and flies counter to principles of stare decisis. Section 251, which governs the reissue of defective patents, provides in pertinent part:
Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.
35 U.S.C. § 251 (emphases added).
As interpreted by this court, the reissue statute imposes two requirements for properly invoking the reissue process. First, the original patent must be “wholly or partly inoperative or invalid.” Hewlett-Packard Co. v. Bausch & Lomb, Inc., 882 F.2d 1556, 1564 (Fed.Cir.1989). Second, “the defective, inoperative, or invalid patent” must have arisen “through error without deceptive intent.” Id. at 1565. There is no dispute in this case that any defect arose without deceptive intent.
Nearly a half century ago, our predecessor court, the Court of Customs and Patent Appeals, clearly stated that adding dependent claims as a hedge against possible invalidity of original claims “is a proper reason for asking that a reissue be granted.” In re Handel, 50 CCPA 918, 312 F.2d 943, 946 n. 2 (1963). The basis for the reissue application in Handel was nearly identical to that in this case. The patentee had mistakenly failed to include narrow claims that he had a right to claim and later sought reissue to obtain those narrower claims without proposing to cancel any broader claims encompassing the claims sought to be added. The proposed reissue claims differed from the existing claims simply by the inclusion of additional limitations.
Judge Giles S. Rich wrote the Handel decision reversing the Board’s rejection of the reissue application. He explained that the reissue claims involved subject matter disclosed in the specification and thus were properly directed to “the invention disclosed in the original patent.” Id. at 944. In a footnote, Judge Rich remarked that “[t]he term ‘inoperative’ has been construed to mean inoperative adequately to protect the invention, which may be due to failure of the solicitor to understand the invention.” Id. at 945 n. 2 (quoting McGrady, Patent Office Practice 309 (4th ed. 1959)). Judge Rich added that because the original patent claims were all retained in the reissue application the “term ‘less’ [in Handel’s reissue declaration] appears to have been used in the sense of fewer claims than he could properly have made, rather than in the statutory sense of subject matter included within the claims.” Id. at 946 n. 2 (emphasis in original). Thus “[t]he narrower appealed claims are simply a hedge against possible invalidity of the original claims should the prior use be proved, which is a proper reason for asking that a reissue be granted.” Id. While this court has since characterized that view as dictum, it has not departed from it.
For example, in In re Muller, 57 CCPA 748, 417 F.2d 1387 (1969), the Court of Customs and Patent Appeals reversed a rejection under § 251 of a reissue application that included all of the original patent claims and four additional narrower claims. The issue presented to the court was *1250 whether the new claims were improper for reissue as defining a species different from that of the original claims. The court ruled in favor of the applicant and held:
By including an additional limitation in each of four new claims here, appellant is not shifting to different species; he is simply defining his invention more narrowly, which he could have done but failed to do in the prosecution of the patent. We find here no deliberate renunciation of subject matter, and we do not reach the question of whether a deliberate non-election of species can be remedied by reissue. We conclude that the reissue oath here shows that the failure to present the narrower claims was through error without any deceptive intention. The oath was therefore sufficient under 35 U.S.C. § 251.
Muller, 417 F.2d at 1391. Although the court did not expressly address the Handel case or restate the principle set forth there, the plain implication of the court’s statement is that the court regarded the inclusion of dependent claims (i.e., “species”) to be proper in a reissue proceeding, assuming that it was accompanied by an oath asserting that the “failure to present the narrower claims was through error without any deceptive intent.” Id.
Years later, in Hewlett-Packard, this court had before it an application that, like the '948 application here, included all the original claims. 882 F.2d at 1565. Explicitly commenting on the language of footnote 2 in Handel, the panel in Hewlett-Packard observed that “the practice of allowing reissue for the purpose of including narrower claims as a hedge against the possible invalidation of a broad claim has been tacitly approved, at least in dicta, in our precedent.” Id. The court then went on to “assume that that practice is in accordance with the remedial purpose of the statute,” but upheld the invalidation of narrower reissue claims on an entirely different basis — namely, the factual inaccuracy of the affidavits submitted to the PTO in support of the reissue application. Id. at 1565-66.
Even though the rule that adding a dependent claim as a hedge against possible invalidity is a proper reason to seek reissue has seemingly never been formally embodied in a holding of this court or its predecessor, articulation of the rule in Handel was not simply a passing observation — it was a considered explanation of the scope of the reissue authority of the PTO in the context of a detailed explanation of the reissue statute. Based on this court’s adoption of that rule and its adherence to the rule in both Muller and Hewlett-Packard, this court rejects the Board’s contrary ruling.
This court also rejects the PTO’s assertion that the omission of a narrower claim from an original patent does not constitute an error under § 251 because the omission of a dependent claim does not render the patent inoperative. While the Board correctly recognized that a patent is inoperative under § 251 if it is ineffective to protect the disclosed invention, the Board improperly assumed that Tanaka’s original patent cannot be deemed partly inoperative in the absence of claim 16, whose scope is subsumed by claim 1, from which it depends. Decision at 17-18. This court, however, has recognized that “each claim is a separate statement of the patented invention.” Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1220 (Fed.Cir.1995). And each claim of a patent has a purpose that is separate and distinct from the remaining claims. Claims of narrower scope can be useful to clarify the meaning of broader, independent claims under the doctrine of claim differentiation. Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed.Cir.2005). And dependent *1251 claims are also less vulnerable to validity-attacks given their more narrow subject matter. Thus, the omission of a narrower claim from a patent can render a patent partly inoperative by failing to protect the disclosed invention to the full extent allowed by law.
Finally, this court rejects the Board’s conclusion that adding a single dependent claim to the originally issued claims is equivalent to the disallowed practice of filing a “no defect” reissue. Decision at 20-23. This court in In re Dien addressed the PTO’s former practice of allowing patentees to file a reissue application for the purpose of having the claims reexamined in light of newly discovered prior art without alleging a defect nor seeking any change in the patent. 680 F.2d 151, 152 (CCPA 1982). The court criticized this practice as permitting a patentee to obtain an advisory opinion from the PTO. Id. at 154. Here, however, there is no dispute that Tanaka has admitted error in the original prosecution, pointing out that he neglected to seek a narrower dependent claim to which he was entitled. In addition, unlike the practice of “no defect” reissue, Tanaka’s reissue application requested changes to his patent in the form of a new dependent claim. Applying for a reissue that adds only narrower claims without amending any of the original claims is not the same as a “no defect” reissue.[1]
Teva argues as amicus that the public has an interest in preventing patentees from seeking reissue only to add narrower claims because such practice limits the public’s ability to rely on what is actually claimed in an issued patent. This court, however, sees no problem that is not already addressed by the equitable intervening rights statute, 35 U.S.C. § 252, “under which a court may protect investments made before reissue ‘to the extent and under such terms as the court deems equitable.’ ” Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1373 (Fed.Cir.2009) (quoting 35 U.S.C. § 252).
This court recognizes that the reissue statute “was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute de novo his original application.” Serenkin, 479 F.3d at 1362 (quoting In re Weiler, 790 F.2d 1576, 1582 (Fed.Cir.1986)). However, the narrow rule relating to the addition of dependent claims as a hedge against possible invalidi *1252 ty has been embraced as a reasonable interpretation of the reissue statute by this court and its predecessor for nearly fifty years without any obvious adverse consequences. To deviate from that longstanding interpretation would be contrary to the doctrine of stare decisis and is unwarranted.
Conclusion
For the foregoing reasons, this court reverses the judgment of the Board and remands for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. The dissent’s reliance on Gage v. Herring, 107 U.S. 640, 2 S.Ct. 819, 27 L.Ed. 601 (1883) for the proposition that a reissue is not proper in the absence of a surrender of subject matter is, with all due respect, misplaced. Gage did not address whether a reissue required that something be surrendered in the original claim(s) but instead invalidated a newly added claim that was broader than the original claim under a statute that at that time permitted correction of claims by reissue for the purpose of narrowing the claims; i.e., where the patentee claimed "more than he had a right to claim as new.” Id. at 644-45, 2 S.Ct. 819 (citing Act of July 8, 1870, ch. 230, § 53, 16 Stat. 198). Although the Supreme Court had interpreted that statute to permit broadening reissue in certain circumstances, the Court in Miller v. Brass Co. cautioned that "[r]eissues for the enlargement of claims should be the exception and not the rule.” 104 U.S. 350, 355, 26 L.Ed. 783 (1882). Moreover, the dissent's statement that "[hjere, the applicants surrender nothing; they attempt to retain their rights under the original patent in their entirety” ignores applicant's compliance with § 251, which, as the dissent recognizes, requires an offer to surrender the entire original patent upon the filing of a reissue application. See 35 U.S.C. § 251; Manual of Patent Examining Procedure § 1440-58 (7th rev. 2008) ("[A]n original claim, if re-presented in a reissue application, will be fully examined in the same manner, and subject to the same rules as if being presented for the first time in an original non-reissue, nonprovisional application.”).